**Irving M. HIGGINS, Plaintiff,**

v.

**CAPITOL CREDIT SERVICES, INC., Defendant.**

**Civ. A. No. 90–162 MMS.**

United States District Court, D. Delaware.

April 12, 1991.

O. Randolph Bragg of UAW–GM Legal Services Plan, Newark, Del., for plaintiff.

Phebe S. Young of Bayard, Handelman & Murdoch, P.A., Wilmington, Del., for defendant.

### OPINION

MURRAY M. SCHWARTZ, Senior District Judge.

The plaintiff filed suit in this case on April 6, 1990 alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C.A. §§ 1692 *et seq.* ("FDCPA" or "the Act"). At bar are plaintiff's motion for partial summary judgment on the question of defendant's[1] liability and defendant's cross-motion for summary judgment. For the reasons which follow, defendant's motion for summary judgment will be granted, and plaintiff's motion for summary judgment will be denied.

### STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

■ Summary judgment will be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). When the movant has carried its burden under Rule 56(c), the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citation omitted) (footnote omitted); the non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." *Id.* at 587, 106 S.Ct. at 1356 (quoting Fed.R.Civ.P. 56(e)) (emphasis omitted). A factual dispute between the parties will not defeat a motion for summary judgment unless it is both *genuine* and *material*. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10,

---

1. The complaint names Capitol Credit Services, Inc. and C.D. Collins as defendants. It has since been revealed that "C.D. Collins" is a fictitious name used by defendant Capitol Credit Services to identify certain accounts. As "C.D. Collins" is not a person or entity capable of being sued, the court will treat Capitol Credit Services as the sole defendant.

91 L.Ed.2d 202 (1986). The non-moving party must produce more than a mere scintilla of evidence to successfully oppose summary judgment. *See Williams v. Borough of West Chester,* 891 F.2d 458, 460 (3d Cir.1989). Any inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing summary judgment. *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356 (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)).

"The filing of cross-motions for summary judgment does not require the Court to grant summary judgment for either party." *Krupa v. New Castle County,* 732 F.Supp. 497, 505 (D.Del.1990) (citing *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1391 (Fed.Cir.1987)). This is because each party may base its motion on different legal theories involving different material facts. *Id.* at 506. Further, different reasonable inferences may be drawn from the same facts. When there are no issues of fact and no conflicting inferences, the court may render summary judgment as a matter of law.

■■■ Determination of whether a violation of the FDCPA has occurred involves a two-step process. First, the court must interpret the statute, if necessary. Second, there must be a determination of whether defendants violated the statute as interpreted by the court. *See United States v. ACB Sales & Services, Inc.,* 590 F.Supp. 561, 569–70 (D.Ariz.1984) (memorandum opinion). The first step of the process involves the court in statutory construction. The United States Court of Appeals for the Third Circuit has noted that statutory construction is a question of law, and as such, is "peculiarly appropriate for independent judicial assessment." *Dunat v. Hurney,* 297 F.2d 744, 746 (3d Cir.1961) (quoting *O'Leary v. Brown–Pacific–Maxon, Inc.,* 340 U.S. 504, 508, 71 S.Ct. 470, 472, 95 L.Ed. 483 (1951)). Accordingly, statutory construction is a proper subject for summary judgment. *See generally Americans Disabled for Accessible Public Transportation v. Skinner,* 881 F.2d 1184, 1191 n. 6

(3d Cir.1989); *Jordan v. Kent Recovery Services, Inc.,* 731 F.Supp. 652, 656 (D.Del. 1990).

THE FACTS

The complaint filed in this case alleges violations of the FDCPA arising from notices sent to plaintiff by defendant. According to defendant's records, an initial collection notice and a follow-up notice were sent to plaintiff on December 23, 1988 and January 4, 1989 respectively. Both of these notices were returned to defendant unopened, presumably due to insufficient address. Appendix to Plaintiff's Motion for Partial Summary Judgment at A–71 (Dkt. 15A) (deposition of M.J. Spinella, President, Capitol Credit Services, Inc.) (cited hereafter as "A–__"). Defendant's records also indicate that defendant sent another initial notice to plaintiff on March 29, 1989 ("March 29 notice") and a follow-up notice on April 12, 1989 ("April 12 notice"). A–31 (Spinella dep.); A–42 (Spinella dep.); A–74.

The April 12 notice is attached as Exhibit A of the Complaint. The front of the notice reads in part as follows:

**IMMEDIATE SETTLEMENT NOTICE**

Your account must be settled **now.** We have tried to approach this in a friendly way but for some reason you refuse to cooperate. If you have a problem, write or call us, but **do not ignore this letter.** Further **action** depends on you. What are your intentions?

Complaint Exh. A (Dkt. 1) (emphasis in original). In the bottom left-hand corner of the notice appears the phrase " ** See Reverse ** " in roughly the same size print as the rest of the notice. The back of the notice, in roughly the same size print as the front of the notice, states:

**NOTICE: PURSUANT TO PUBLIC LAW 95–109 (FAIR DEBT COLLECTION PRACTICES ACT)**

If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name

and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

A–77.

Defendant's records indicate another notice was sent to plaintiff on April 19, 1989 ("April 19 notice"). The April 19 notice is not in the record. Finally, plaintiff has attached to the complaint a letter from defendant to plaintiff dated May 10, 1989 ("May 10 letter"), which states as follows:

> Our records show that the above listed bill(s) has (have) not been paid.
>
> This letter is your formal notice that we are preparing a Power of Attorney to file suit at the local Justice of the Peace Court. If this is approved it could result in an attachment of your personal property and/or wages at CHRYSLER.
>
> Payment in full within 10 days will stop all recommended action.

Complaint Exh. B (Dkt. 1).

ANALYSIS

*Claims Arising From Alleged Violations in the March 29 and April 19 Notices*

Although the complaint alleges violations only as to the April 12 notice and the May 10 letter, plaintiff in his briefing appears to raise claims arising from the March 29 and April 19 notices. *See, e.g.,* Plaintiff's Opening Brief at 8 (Dkt. 15) ("Each of the Defendant's first three letters dated March 29, 1989, April 12, 1989, and April 19, 1989 … notifies the consumer to contact the debt collector 'in writing' to dispute the debt.… This is in conflict with the requirements of the Fair Debt Collection Practices Act.…"). At oral argument, plaintiff's counsel informed the court that plaintiff will not seek to amend his complaint to include causes of action arising out of the March 29 and April 19 notices. Plaintiff's counsel represented that plaintiff is unable to recall, much less offer proof as to whether or when he received the March 29 and April 19 notices. Consequently, to the extent the plaintiff's summary judgment motion asserts violations of the FDCPA arising from the contents of the March 29 and April 19 notices, plaintiff's motion for summary judgment will be denied. To the extent defendant's motion addresses the alleged violations in the March 29 and April 19 notices, defendant's motion for summary judgment will be granted. The discussion in the remainder of this Opinion is limited to the alleged violations of the FDCPA arising from the April 12 notice and the May 10 letter.

*Alleged Violations of 15 U.S.C.A. § 1692g(a)(3)*

Plaintiff asserts that the language on the back of the April 12 notice quoted previously contradicts his rights in violation of 15 U.S.C.A. § 1692g(a)(3). Section 1692g(a) requires the debt collector, within five days of the initial communication with the consumer, to provide written notice to the consumer of the following:

> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C.A. § 1692g(a).

The language on the reverse side of the April 12 notice quotes section 1692g(b),

which provides that if the consumer disputes the debt in writing pursuant to sections 1692g(a)(4) or (5), all collection activity must cease until the debt collector has provided the consumer with verification of the disputed portion of the debt and/or the name and address of the original creditor. *Compare* A–77 *with* 15 U.S.C.A. § 1692g(b). Plaintiff asserts that defendant's quotation of section 1692g(b) on the back of the April 12 notice violated plaintiff's rights under section 1692g(a).

■ One of the purposes of the FDCPA is "to protect consumers from a host of unfair, harassing, and deceptive debt collection practices…." S.Rep. No. 382, 95th Cong., 1st Sess. 1, *reprinted in* 1977 U.S. Code Cong. & Admin.News 1695, 1696. In light of this consumer-protective purpose, the court agrees with plaintiff that if it finds that the least sophisticated debtor would likely be misled by the notice into ignoring his rights, the court must hold that the collection agency has violated the Act. *Swanson v. Southern Oregon Credit Service, Inc.*, 869 F.2d 1222 (9th Cir.1988) (per curiam).

■ The court begins its analysis with the consumer's rights under section 1692g(a). At the outset, the court notes that a debt collector must provide the information set forth in section 1692g(a) only in the initial communication or within five days thereof. The April 12 notice is not the "initial communication." Plaintiff has conceded both in his briefing and at oral argument that defendant sent a prior notice on March 29, 1989. Consequently, plaintiff cannot assert that the April 12 notice violates section 1692g(a) because it fails to provide all of the information set out in that section. This does not mean, however, that the language of the April 12 notice cannot violate section 1692g(a). The Ninth Circuit Court of Appeals has held that the rights set forth in section 1692g(a) must be conveyed effectively to the consumer and that the remainder of the communication must not mislead an unsophisticated consumer into foregoing or ignoring his section 1692g(a) rights. *Swanson*, 869 F.2d at 1225. In order to protect the consumer, it would appear that subsequent notices likewise should not mislead an unsophisticated consumer to forego his rights under section 1692g(a). Thus, plaintiff can assert a violation if he shows that the language in the April 12 notice would mislead the least sophisticated consumer to forego his rights under section 1692g(a).

Sections 1692g(a)(3)–(5) describe a time period of thirty to thirty-five days from the date the consumer receives the debt collector's initial communication ("thirty-day period") in which the consumer may dispute the debt or a portion thereof. Section 1692g(a)(3) provides that the debt collector may assume the debt is valid if the consumer fails to dispute it within the thirty-day period. If the consumer disputes the debt within the thirty-day period pursuant to section 1692g(a)(3), the presumption that the debt is valid is removed. The consumer can impose certain affirmative obligations upon the debt collector to provide further information if the consumer disputes the debt in writing pursuant to sections 1692g(a)(4) or (5) prior to the end of the thirty-day period. If the consumer disputes the debt in writing pursuant to sections 1692g(a)(4) or (5), the debt collector must cease collection activity until it has fulfilled its obligation to provide further information. 15 U.S.C.A. § 1692g(b).

■ The parties agree that the sending and receipt of the April 12 notice falls within the thirty-day period described in section 1692g(a). Higgins asserts that defendant's quotation of section 1692g(b) on the back of the April 12 notice violated the Act because it would cause the least sophisticated consumer to believe that he may only dispute the debt in writing, even though the thirty-day period for disputing the debt pursuant to section 1692g(a)(3) had not yet run. Plaintiff argues that he may dispute the debt by telephone or in person, as well as in writing, if he wishes pursuant to section 1692g(a)(3) only to negate the presumption that the debt is valid. Assuming, without deciding, that plaintiff's construction of section 1692g(a)(3) is correct and defendant cannot require him to

dispute the debt pursuant to section 1692g(a)(3) in writing, the court nevertheless finds that the April 12 notice does not misstate plaintiff's rights.

Plaintiff's argument fails to take into account the significant difference between a consumer's rights pursuant to section 1692g(a)(3) and his or her rights pursuant to sections 1692g(a)(4) & (5). Whereas the consumer's written dispute of the debt pursuant to sections 1692g(a)(4) or (5) imposes affirmative obligations on the debt collector to cease temporarily collection activity and to provide the consumer with certain information, a *notification* pursuant to section 1692g(a)(3) places no duty upon the debt collector to act and merely removes a presumption that the debt is valid. *Generally, Young v. Credit Bureau of Lockport, Inc.*, Civ. 86–1121E at 3–4, 1989 WL 79054 (W.D.N.Y. July 14, 1989) (unpublished memorandum and order) (attached as Exhibit A to Plaintiff's Opening Brief (Dkt. 15)).

The language on the back of the April 12 notice simply informed Higgins that he could obtain further information and cause the collector to cease collection activity until the information is supplied if he disputed the debt in writing within thirty days. In other words, the reverse side of the April 12 notice accurately informed plaintiff of his rights pursuant to sections 1692g(a)(4) & (5) and section 1692g(b). The April 12 notice did not inform plaintiff that he could remove the presumption that the debt is valid by disputing the debt pursuant to section 1692g(a)(3) in person or by telephone, as well as in writing. Contrary, therefore, to plaintiff's assertions, the April 12 notice did not *misstate* his rights; rather, it merely failed to inform him of *all* of his rights.

As stated above, because the March 29 notice was the initial communication, defendant was not obligated to disclose *any* of the consumer's section 1692g(a) rights in the April 12 notice. The question before the court, therefore, is *not* whether the April 12 notice misstated plaintiff's rights, but whether a debt collector who undertakes to remind a consumer of *some* of his

section 1692g rights in a subsequent communication is obligated to disclose *all* of the rights.

Plaintiff urges that the language in the April 12 notice, disclosing only the rights which are triggered by a dispute in writing, would mislead the least sophisticated consumer to believe that he must dispute the debt in writing if he wishes to remove the presumption of the debt's validity even though less than thirty days had passed since the initial communication. The confusion, however, lies not with defendant's notice but with section 1692g(a) itself. Of the three provisions of section 1692g(a) dealing with dispute of the debt, two explicitly require that the debt be disputed in writing. An unsophisticated debtor reading the statute or a paraphrase thereof could easily misconstrue it and conclude that all three provisions require him or her to dispute the debt in writing. The confusion inherent in section 1692g(a) is apparent from the division of the courts over the issue of whether a debt collector may require a dispute in writing pursuant to section 1692g(a)(3). *Compare Harvey v. United Adjustors*, 509 F.Supp. 1218, 1221 (D.Ore.1981) (Act does not require that dispute pursuant to section 1692g(a)(3) be in writing; therefore, debt collector may not so require) *with Graziano v. Harrison*, Civ. No. 90–1707(DRD), slip op. at 10–12 (D.N.J. Dec. 31, 1990), *appeal docketed* No. 91–5802 (3d Cir. Feb. 8, 1991) (debt collector may require dispute to be in writing).

By disclosing some of plaintiff's rights in the April 12 notice, defendant went beyond the disclosure requirements of the FDCPA. The court will not penalize a debt collector who discloses more than is required by the Act. One of the purposes of the disclosure requirement of section 1692g(a) is to ensure that consumers are made aware of their rights with respect to debt collection activities. Restatement by a debt collector in correspondence subsequent to the initial communication of some of the consumer's section 1692g(a) rights furthers this goal. The FDCPA was intended to prevent abusive debt collection practices. It was *not* intended to penalize honest debt collectors. The court finds that defendant's reiteration

of Higgins' rights under sections 1692g(a)(4) & (5) in the April 12 notice did not violate the Act. If the possibility of confusion arises from the additional disclosure, it arises from the fact that the consumer's sections 1692g(a)(4) & (5) rights are triggered only by a dispute in writing. The propensity to confuse the least sophisticated debtor arises not from defendant's disclosure but rather from the differences among the provisions of the Act itself.

Plaintiff also argues that the April 12 notice violates section 1692g(a) because of the heading "IMMEDIATE SETTLEMENT NOTICE" and because it informs the consumer that "Your Account Must Be Settled Now." As stated above, the April 12 notice was sent and received within the thirty-day period and should not contradict or overshadow the rights of the consumer pursuant to section 1692g(a). Plaintiff asserts the words "immediate" and "now" are misleading because they overshadow the consumer's right under section 1692g(a) to dispute the debt within thirty days of the initial communication.

While the FDCPA was intended to protect consumers from unscrupulous debt collection practices, it was not intended to shield even unsophisticated consumers from the embarrassment and inconvenience which are the natural consequences of debt collection. *Bieber v. Associated Collection Serv., Inc.*, 631 F.Supp. 1410, 1417 (D.Kan. 1986). Congress also intended to avoid imposing unnecessary restrictions on ethical debt collectors. S.Rep. No. 382, 95th Cong., 1st Sess. 1–2, *reprinted in* 1977 U.S.Code Cong. & Admin.News 1695, 1696 ("[FDCPA's] purpose is to protect consumers ... *without imposing unnecessary restrictions on ethical debt collectors* ") (emphasis added); 15 U.S.C.A. § 1692(e) ("It is the purpose of [the FDCPA] to eliminate abusive debt collection practices by debt collectors [and] *to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged....* ") (emphasis added). Nowhere does the Act prohibit debt collectors from encouraging consumers to pay their debts. The court in *Dixon v.*

*United Adjusters*, C.A. No. 79–179 (D.Ore. Feb. 19, 1981) (slip op.) found that the Act does not prohibit statements such as "immediate cooperation is essential" and "time is running out" in collection notices. This court likewise finds that the language of the April 12 notice merely encourages payment of the debt and does not violate any provision of the FDCPA. Defendant's motion for summary judgment with respect to the alleged violations of 15 U.S.C.A. § 1692g(a) in the April 12 notice will be granted. Plaintiff's motion for summary judgment with respect to the alleged violations of section 1692g(a) in the April 12 notice will be denied.

Similarly, the statement in the May 10 letter that "[p]ayment in full within 10 days will stop all recommended action," does not violate the Act. Plaintiff argues that the disclosure on the reverse side of the April 12 notice would lead the least sophisticated consumer to believe he had thirty days from the date of the April 12 notice to dispute the debt in writing. The court agrees. This, however, would extend the thirty-day period only to May 12. The May 10 letter would not violate plaintiff's extended rights under section 1692g(a) and the April 12 notice because the ten-day period provided for payment in the May 10 letter would not expire until May 20.

Assuming the April 12 notice resulted in extending the thirty-day period, the thirty-day period ran from the date plaintiff received the April 12 notice. *See* 15 U.S.C.A. § 1692g(a)(3). Although this might mean the thirty-day period extended beyond May 12, the only evidence in the summary judgment record in this regard is the evidence offered by defendant that the notice was sent April 12 and the letter was sent May 10. *See, e.g.* A–74. In support of his own motion for summary judgment, plaintiff must show that the thirty-day period granted by the April 12 notice extended beyond the ten-day period described by the May 10 notice. In opposition to defendant's summary judgment motion, Higgins had to come forward with specific facts showing there is a genuine issue of fact as to whether the thirty-day period extended past the May 10 letter's ten-day period. The mere

allegations of plaintiff's counsel in his briefs and at oral argument, unsupported by any facts in the summary judgment record, does not satisfy plaintiff's burden. Since a debt collector can legally demand payment immediately after the thirty-day period granted by section 1692g(a) has expired and since plaintiff has not met his burden in support of his own summary judgment motion or in opposition to defendant's motion to show that the thirty-day period extended beyond the ten-day period, the demand in the May 10 letter that payment be made within ten days did not violate Higgins' rights under section 1692g(a) or the thirty-day period extended by the April 12 notice. Plaintiff's summary judgment motion with regard to the alleged violations of 15 U.S.C.A. § 1692g(a) in the May 10 letter will be denied. Defendant's motion for summary judgment on the alleged violations of section 1692g(a) by the May 10 letter will be granted.

*Alleged Violations of 15 U.S.C.A. §§ 1692e(4) & (5)*

Section 1692e generally prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." The remainder of the section lists various violative conduct, including:

> (4) The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.
>
> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

The basis for plaintiff's claims pursuant to sections 1692e(4) & (5) is the following statement in the May 10 letter:

> This letter is your formal notice that we are preparing a Power of Attorney to file suit at the local Justice of the Peace Court. If this is approved it could result in an attachment of your personal property and/or wages at CHRYSLER.

Plaintiff asserts that the debt collector cannot legally file suit in the Justice of the Peace Court and, as a consequence, the May 10 letter threatens garnishment or attachment which is not lawful in violation of section 1692e(4) and an action that cannot legally be taken in violation of section 1692e(5).[2] Plaintiff bases his assertion on a statute found in the section of the Delaware Code dealing with the Justice of the Peace Courts:

> Where the person bringing the action under this subchapter is a corporation, the action may be prosecuted by an officer or employee of the corporation who need not be a duly licensed attorney at law.

10 Del.C. § 9525(b). Despite the language "may be prosecuted," plaintiff reads section 9525(b) as limiting rather than permissive. Plaintiff asserts section 9525(b) pro-

---

**2.** Although plaintiff's briefing implies that plaintiff also asserts claims under the portions of sections 1692e(4) & (5) which prohibit debt collectors from threatening to take action they do not intend to take, plaintiff's counsel conceded at oral argument that defendant intended to file suit at the time it sent the May 10 letter. Further, plaintiff has not carried his summary judgment burden with respect to the issue of defendant's intent. The sole factual basis for plaintiff's assertions in his brief that defendant did not intent to file suit was the fact that suit was never filed. In support of its motion for summary judgment and in opposition to plaintiff's motion, defendant's principal testified that defendant has a policy regarding the conditions under which the decision to file suit will be made. If these conditions are met, then defendant will decide to follow suit and a letter similar to the May 10 letter will be mailed to the debtor. A–53–54 (Spinella dep.). Defendant also offered testimony that the power of attorney was probably prepared in this case but never sent to the creditor to be completed because plaintiff responded to the May 10 letter on May 11 and set up a schedule to repay the debt. A–34 & 57–58 (Spinella dep.). In opposition to defendant's evidence in the summary judgment record, plaintiff must do more than raise a doubt about defendant's intent based upon the fact that the threatened action was never taken. Rather plaintiff must come forward with facts which show that there is a genuine dispute as to the issue of intent. Since plaintiff has failed to do so, defendant's motion for summary judgment will be granted as to any alleged violations of the portions of sections 1692e(4) & (5) which prohibit a debt collector from threatening action it does not intend to take.

hibits anyone other than an officer or employee from bringing suit in Justice of the Peace Court on behalf of a corporation.

Defendant counters plaintiff's argument by asserting that the defendant, when filing suits to collect debts on behalf of creditors, follows the guidelines set out in Justice of the Peace Court Directive 14:[3]

Subject: *Suits brought in Justice of the Peace Courts by Collection Agencies*

To clarify the situation as to what action must be taken by a Collection Agency before they can bring suit in the Justice of the Peace Court, the following Directive is issued:

1. Before a Collection Agency may bring suit on behalf of the plaintiff, they must file with the Justice of the Peace Court in which they wish to bring suit a Power of Attorney signed by the creditor specifically giving them this authority.

Even if such Power of Attorney is filed as above outlined, this does not give the Collection Agency the right to bring suit in its own name nor does it give them the right to sign Forms # 12 and # 13 in order to obtain a default judgment. Such forms under such circumstances must still be signed by the plaintiff.

 The Directive is dated October 13, 1966 and was copied to then-Chief Justice Wolcott of the Delaware Supreme Court. Justice of the Peace Court directives are interpretations of Delaware law by the Chief Magistrate and issued as guidance to the other justices of the peace, who are not necessarily attorneys. *Wilmington Trust Co. v. Barron*, 470 A.2d 257, 260–61 (Del.Supr.1983). While advisory in nature, the directives are given legal effect by the judgments of the justices of the peace made pursuant to the directives in actual cases and controversies. *Id.* at 261. A directive may be challenged by appealing to the Delaware Superior Court a decision rendered by a justice of the peace pursuant to the directive. *Id.* at 260–61.

 The court notes at the outset that a suit in federal court alleging violation of the Fair Debt Collection Practices Act is not an appropriate forum for challenging state court procedures, and the court will not reach the issue of whether Directive 14 is a correct interpretation of Delaware law. In its recent decision in *Beattie v. D.M. Collections, Inc.*, 754 F.Supp. 383 (D.Del.1991), this court held that a debt collector may be held liable for violating section 1692e(5) if the collector threatens to file a lawsuit which it knows or should know is unavailable or unwinnable by reason of a legal bar such as the statute of limitations. *Id.* at 393 (citing *Kimber v. Federal Financial Corp.*, 668 F.Supp. 1480, 1487 (M.D.Ala.1987)). The same reasoning is equally applicable to section 1692e(4).

 In this case, defendant offered evidence that it routinely files suit against debtors in Justice of the Peace Court pursuant to the guidelines set out in Directive 14. In fact, defendant asserts that it files between 200 and 250 such suits each month, a figure which plaintiff does not contest. A–56 (Spinella dep.). Directive 14 has been in existence since 1966. Plaintiff has not cited, nor has the court been able to uncover, any instance in which a justice of the peace refused to allow a debt collector to file suit pursuant to Directive 14 or wherein Directive 14 has been overturned or declared incorrect by any Delaware court. Consequently, the court finds that defendant's May 10 letter did not violate the standard set out in *Beattie*. In light of its previous experience in filing suits in Justice of the Peace Court, there was no reason for Capitol Credit Services to suspect that the action threatened in its May 10 letter might be unavailable or unwinnable because of some legal bar. Defendant did not fail to exercise reasonable care in determining whether the threatened action was available. *See Beattie*, 754 F.Supp. at 393. The court finds that defendant's May

---

**3.** Although technically not part of the summary judgment record submitted by the parties, a copy of Directive 14 was obtained by the court from the Administrative Office of the Justice of the Peace Courts and supplied to the parties prior to oral argument. Neither party has objected to the court's consideration of the copy of Directive 14. The court hereby takes judicial notice pursuant to Federal Rule of Evidence 201 of the contents of Directive 14.

10 letter did not violate sections 1692e(4) & (5) by threatening to take an action which could not legally be taken, regardless of the position a Delaware court may take in the future regarding the correctness of Directive 14. In so holding, this court takes no position as to the correctness of the Chief Magistrate's interpretation of Delaware law as set forth in Directive 14.

That portion of plaintiff's motion for summary judgment alleging violations of sections 1692e(4) & (5) will be denied. That portion of defendant's motion for summary judgment asserting that defendant is not liable for violating sections 1692e(4) & (5) will be granted.

*Alleged Violations of 15 U.S.C.A. § 1692e(10)*

 Finally, plaintiff alleges that the language of both the April 12 notice and the May 10 letter violates 15 U.S.C.A. § 1692e(10), which prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

Plaintiff asserts the April 12 notice violates section 1692e(10) because it is titled "IMMEDIATE SETTLEMENT NOTICE," demands settlement "now," and threatens "further action." In support of his assertion, plaintiff argues again that this language contradicts and overshadows his right to dispute the debt within the thirty-day period. The Act does not prohibit debt collectors from attempting to collect debts, but merely from doing so unscrupulously. The court finds that the least sophisticated debtor would understand the language of the April 12 notice as an attempt to get him to pay his debt and nothing more. The court finds no tendency in the language to abuse or deceive an unsophisticated debtor.

Plaintiff also argues that the language of the May 10 letter stating "[i]f [the Power of Attorney] is approved, it could result in an attachment of your personal property and/or wages at CHRYSLER," violated section 1692e(10). Plaintiff asserts this language would mislead an unsophisticated debtor to believe that the approval of the Power of Attorney, without more, would

cause attachment of his property or garnishment of his wages. The court finds the least sophisticated debtor would not be misled by the May 10 letter. The court assumes that the least sophisticated debtor understands that the phrase "could result in" connotes a possible future occurrence and not an inexorable certainty. Even the least sophisticated debtor would take the statement in the May 10 letter to mean that failure to pay his debt might lead to garnishment of his wages or attachment of his property. Defendant does not violate the Act by failing to set out the precise procedural mechanics which it intends to pursue in order to attach plaintiff's wages. *See Riveria v. MAB Collections, Inc.,* 682 F.Supp. 174, 177–78 (W.D.N.Y.1988). The fact that defendant chose to reveal part of the procedure it intended to follow does not change this result. The court finds that defendant's May 10 letter did not violate section 1692e(10). Plaintiff's summary judgment motion alleging violations of 15 U.S.C.A. § 1692e(10) will be denied. The portion of defendant's motion for summary judgment addressing its liability under section 1692e(10) will be granted.

An order will be entered conforming with this Opinion.