E. Steven DUTTON, Appellee,

v.

WOLPOFF AND ABRAMSON, Appellant.

No. 92–7533.

United States Court of Appeals, Third Circuit.

Argued April 27, 1993.

Decided Sept. 7, 1993.

Neal J. Levitsky, Louis P. Agostini, Jr., Agostini & Levitsky, Wilmington, DE, Ronald S. Canter (argued), Wolpoff & Abramson, Bethesda, MD, for appellant.

O. Randolph Bragg, Andrea G. Green (argued), UAW Legal Services Plan, Newark, DE, for appellee.

PRESENT: BECKER, HUTCHINSON and WEIS, Circuit Judges.

## OPINION OF THE COURT

HUTCHINSON, Circuit Judge.

Appellant, the law firm of Wolpoff and Abramson (the "law firm"), appeals an order of the United States District Court for the District of Delaware. By that order, the district court entered judgment for statutory damages in favor of appellee, E. Steven Dutton ("Dutton"), on two claims under the Fair Debt Collection Practices Act ("FDCPA" or the "Act"), 15 U.S.C.A. § 1692 (West 1982 & Supp.1993).

The district court had subject matter jurisdiction over this case under 15 U.S.C.A. § 1692k(d) (West 1982). We have appellate jurisdiction over this appeal from the final order of the district court under 28 U.S.C.A. § 1291 (West Supp.1993).

After denying the law firm's renewed Federal Rule of Civil Procedure 50 motion for a verdict as a matter of law, the district court granted judgment for Dutton as a matter of law on his claim that the law firm violated 15 U.S.C.A. § 1692e(11) (West 1982), a disclosure provision. On Dutton's claim that it violated 15 U.S.C.A. § 1692e(10) (West 1982), which prohibits misleading statements in debt collection communications, the court sent that question to the jury which decided in favor of Dutton.

On the subsection (11) disclosure claim, the law firm contends that the entry of judgment as a matter of law for Dutton was contrary to Congress's intent in enacting that section of the statute. The law firm relies on an FTC opinion letter and a judicial decision concerning the application of subsection (11)'s disclosure provisions to a debt collector's follow-up letters. On the subsection (11) non-disclosure claim, the plain language of the FDCPA ultimately constrains us to affirm.

On Dutton's subsection (10) claim, the law firm asserts that the district court erred in not entering a verdict for it as a matter of law because Dutton had failed to show that the settlement letters were misleading. There is indeed no evidence that Dutton, the actual plaintiff, was misled, but the decisive issue on that claim is whether the settlement letters could have misled the hypothetical consumer that Congress enacted the statute to protect. On that issue, we think the potential effect of the law firm's letter was for the jury.

## I.

Sometime before March 1989, Dutton became delinquent on debts evidenced by two separate accounts he owed to Macy's Northeast, Inc. ("Macy's"). Macy's retained the Wolpoff and Abramson law firm to collect these debts. On March 16, 1989, and March 27, 1989, the law firm sent Dutton separate collection letters on each account. The letters were identical and, on the reverse side, contained a full disclosure statement in accord with FDCPA requirements.

Dutton failed to pay and the law firm filed suit on Macy's behalf in the Court of Common Pleas for New Castle County, Delaware on each delinquent account. Dutton did not respond and the state court entered a default judgment against him. On November 1, 1990, with the debts still unpaid, the law firm sent Dutton two identical "settlement letters." They offered to settle the debts the accounts evidenced for fifty percent of the balance claimed. After reciting the account numbers and the balance due each letter stated:

Dear Sir/Madam:

Christmas comes early from Macys. Our records show a judgment was entered against you for the above sum (which includes principle, [sic] interest, court costs and attorney fees if applicaple [sic]).

Our client has allowed us to accept a one time settlement of ½ of the above balance. This offer is good for 30 DAYS ONLY from the date of this letter. When the payment is received, *we will release all liens* and mark the judgment as Paid and Satisfied.

If you have any questions, please feel free to call our office. We have enclosed an envelope with our new address for your convenience.

Very truly yours
WOLPOFF AND ABRAMSON

Appellant's Appendix ("App.") at A–11, A–16 (emphasis added). These two letters are the basis for Dutton's claims under the FDCPA.

Through his counsel, U.A.W. Legal Services Plan (the "Plan"), Dutton filed two separate district court actions against the law firm for violation of the FDCPA.[1] The district court consolidated them. It did not rule on the parties' cross-motions for summary judgment,[2] and the case went to trial on September 8, 1992. During the trial, the law firm asked Dutton how he was misled. He was unable to answer and referred the question to his attorney.[3] After the record was closed, the district court held as a matter of law that the firm had violated subsection (11)'s express requirements that a debt collector disclose in "all communications" that the communication's purpose is collection of a debt and that any information furnished in response will be used for that purpose.

Later, after denying the law firm's motions for judgment as a matter of law on the subsection (10) misrepresentation claim, the district court sent the issue of whether the law firm had falsely implied it had liens on Dutton's property to the jury and also asked the jury to decide what Dutton should be awarded in statutory damages.[4] The jury found that the letters falsely implied liens had already been obtained on Dutton's goods in violation of § 1692e(10) and awarded Dutton statutory damages of $500.00. The law firm filed a timely notice of appeal.

## II.

The meaning of a statute is a legal question subject to plenary review. *Air Courier Conference of Am. v. United States Postal Serv.*, 959 F.2d 1213, 1217 (3d Cir. 1992). Whether a party is entitled to a verdict as a matter of law is also a legal issue

1. Research indicates that Dutton's counsel favors strict construction and vigorous enforcement of the provisions of the FDCPA at issue here. The Plan has represented plaintiffs suing under the Act in over fifty other reported cases. One of those other actions was also on behalf of the easily deceived but not always injured Mr. Dutton. *See Dutton v. Wohlar*, 809 F.Supp. 1130, 1132 (D.Del.1992). The Plan's propensity for litigating cases where no actual damage is present has prompted one judge to suggest that Rule 11 sanctions may be a proper response to the filing of these actions. *See Frey v. Gangwish*, 970 F.2d 1516, 1522 (6th Cir.1992) (Suhrheinrich, J., dissenting).

   Perhaps the opinion of America's most revered lawyer, Abraham Lincoln, may also warrant the passing consideration of counsel. Lincoln once criticized lawyers who "habitually overhaul[] the register of deeds in search of defects in titles, whereon to stir up strife...." *Lincoln Talks— An Oral Biography* 52–53 (Emanuel Hertz ed. 1939) (quoting John G. Nicolay & John Hay, *Abraham Lincoln*). It is not necessary to repeat all of Lincoln's words, but he did offer this positive advice to all lawyers:

   > Discourage litigation. Persuade your neighbors to compromise whenever you can. Point out to them how the nominal winner is often the real loser—in fees, expenses, and waste of time. As a peacemaker, the lawyer has a superior opportunity of being a good man. There will always be enough business. Never stir up litigation.

   *Id.* at 52.

   The record before us does not indicate any final disposition of the plaintiff's right to counsel fees or their amount. Of course, that does not affect the finality of the judgment against the law firm on the merits. *See White v. New Hampshire Dept. of Employment Sec.*, 455 U.S. 445, 452 n.

14, 102 S.Ct. 1162, 1167 n. 14, 71 L.Ed.2d 325 (1982) (noting "the collateral character of the fee issue establishes that an outstanding fee question does not bar recognition of a merits judgment as 'final' and 'appealable.' ") (citing *Obin v. District No. 9, Int'l Assoc. of Machinists & Aerospace Workers*, 651 F.2d 574, 584 (8th Cir.1981)); *Halderman v. Pennhurst*, 673 F.2d 628, 644 (3d Cir.1982) (in banc) (Opinion sur Petition for Rehearing), *cert. denied*, 465 U.S. 1038, 104 S.Ct. 1315, 79 L.Ed.2d 712 (1984). If and when the district court is asked to approve fees, we suggest it closely scrutinize that request as to both propriety and amount.

2. Dutton and the law firm acknowledge the absence of any ruling on the cross-motions for summary judgment but do not contend the district court erred in failing to grant either one.

3. Q. In your complaint it states that you are alleging that Wolpoff and Abramson used false and deceptive means in order to collect a debt. What false and deceptive means do you believe Wolpoff and Abramson did in attempting to collect this debt? ...
   A. There was supposed to be a statute on the bottom of the notification. My attorney could specify more about that. That is why she spoke like she did.
   Q. And it is your testimony that the only deceptive means that you believe the defendant employed was not having this disclosure on the bottom of the letter?
   A. I can't answer that statement, sir. I am not—I can't answer that.
   App. at A–52.

4. The parties had already agreed that Dutton had suffered no actual damage.

subject to plenary review, but jury verdicts can be overturned only if the record fails to contain the "minimum quantum of evidence from which the jury could have rationally reached a verdict." *Black v. Stephens,* 662 F.2d 181, 190 (3d Cir.1981), *cert. denied,* 455 U.S. 1008, 102 S.Ct. 1646, 71 L.Ed.2d 876 (1982); *see Duke v. Uniroyal Inc.,* 928 F.2d 1413, 1417 (4th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 429, 116 L.Ed.2d 449 (1991).

In 1977 Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C.A. § 1692(e) (West 1982).

The FDCPA provides in relevant part,

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

. . . .

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

(11) ... the failure *to disclose clearly in all communications made to collect a debt or to obtain information about a consumer,* that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose.

*Id.* §§ 1692e(10), (11) (emphasis added). We will separately consider Dutton's claim under each subsection.

### The § 1692e(11) Claim

The law firm argues the district court erred when it concluded that follow-up communications violate subsection (11) if they do not say expressly that they are an attempt to collect a debt and that any information obtained as a result of them will be used for that purpose. Four United States Courts of Appeals have addressed this question with differing results. *See Carroll v. Wolpoff & Abramson,* 961 F.2d 459, 461 (4th Cir.) (debt collection warning must appear in subsequent correspondence), *cert. denied,* —— U.S. ——, 113 S.Ct. 298, 121 L.Ed.2d 222 (1992); *Pipiles v. Credit Bureau of Lockport, Inc.,* 886 F.2d 22, 26 (2d Cir.1989) (same); *accord Frey v. Gangwish,* 970 F.2d 1516, 1519–20 (6th Cir.1992) (dicta); *but see Pressley v. Capital Credit & Collection Serv., Inc.,* 760 F.2d 922, 925 (9th Cir.1985) (follow-up letter need not include warning).

The law firm urges us to follow the approach of the United States Court of Appeals for the Ninth Circuit in *Pressley* and interpret subsection (11) to exclude follow-up communications.

In *Pressley* the court of appeals relied on *United States v. American Trucking Associations,* 310 U.S. 534, 543–44, 60 S.Ct. 1059, 1063–64, 84 L.Ed. 1345 (1940). There, the United States Supreme Court stated,

There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes. Often these words are sufficient in and of themselves to determine the purpose of the legislation. In such cases we have followed their plain meaning. When that meaning has led to absurd or futile results, however, this Court has looked beyond the words to the purpose of the act. Frequently, however, even when the plain meaning did not produce absurd results but merely an unreasonable one "plainly at variance with the policy of legislation as a whole" this Court has followed that purpose, rather than the literal words.

*Id.* (footnotes omitted). The court in *Pressley* then determined that a follow-up letter repeating a demand for payment of a debt was not a "communication" to which the disclosure provision of subsection (11) applied. *Pressley,* 760 F.2d at 925. The court did not adhere to the text of the statute stating disclosure must be made in *all* communications. It departed from the text because it believed repetitive disclosure in otherwise non-deceptive circumstances would be unreasonably at variance with the statute's purpose " 'to protect consumers from a host of

unfair, harassing, and deceptive debt collection practices without imposing unnecessary restrictions on ethical debt collectors.'" *Id.* (quoting 123 Cong.Rec. S27,386 (daily ed. Aug. 5, 1977) (statement of Sen. Riegle)). Thus, the court of appeals concluded in *Pressley* that subsection (11) is not violated when a follow-up communication that does not disguise its purpose is clearly an attempt to collect a debt. *Id.* at 926.

■ *Pressley* also relied on an informal advisory opinion of the Federal Trade Commission ("FTC"). *See id.* at 925. The FDCPA charges the FTC with enforcement but prohibits it from issuing rules or regulations on debt collection practices. *See* 15 U.S.C.A. § 1692*l* (a), (d) (West 1982). Accordingly, the FTC's advisory opinions are not entitled to deference in FDCPA cases except perhaps to the extent that their logic is persuasive. *See Staub v. Harris,* 626 F.2d 275, 279 (3d Cir.1980). The Ninth Circuit relied on an advisory letter from the Director of the FTC's Office of Congressional Relations to Representative Robert L. Smith. The letter attempted to answer the question whether subsection (11) always required inclusion of a warning in follow-up correspondence.[5] The Director's reasoning persuaded the court that "no useful purpose would be served by repetition of a formal warning in ... a follow up notice to a debtor. Nor was this intended by Congress." *Pressley,* 760 F.2d at 926.

■ *Pressley* is premised on the notion that reading the statute literally would contravene its express purpose. Absent that circumstance we do not think that a court would be justified in looking beyond the plain language of the statute. *See, e.g., Demarest v. Manspeaker,* 498 U.S. 184, 190, 111 S.Ct. 599, 603, 112 L.Ed.2d 608 (1991) ("When we find the terms of a statute unambiguous, judicial inquiry is complete except in rare and exceptional circumstances."), *superseded by statutory amendment on other grounds,*

28 U.S.C.A. § 1821 (West Supp.1993); *see also Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982) (further inquiry warranted only in rare cases where literal application of statute would produce result "demonstrably at odds with the intentions of its drafters"). Requiring a disclosure of purpose and use in all communications is not *always* at odds with this statute's main purpose. Sometimes it is only after numerous exchanges between a creditor and a debtor that a debt collector's abusive conduct becomes apparent. The United States Court of Appeals for the Fourth Circuit has observed, "Consumers sometimes do not receive first notices, and thus, follow-up letters may often provide them with their first notice of the debt collection process." *Carroll,* 961 F.2d at 461. Moreover, it is Congress, not a court, that decides what are the best ways to protect the interests at stake. "Although over-reaching may occur in only a few circumstances, 'Congress [may] exercise its legislative judgment to adopt a reasonable margin of safety to insure its remedial goal.'" *Id.* (quoting *Pipiles,* 886 F.2d at 27). As the court in *Pipiles* noted, the *Pressley* court's interpretation of the FDCPA changes the clear and unambiguous language "*all* communications" and substitutes for it the more limited phrase "some communications." *Pipiles,* 886 F.2d at 27 (emphasis in original). Absent the most compelling legislative history or the strongest practical indication that the purpose of subsection (11) would be frustrated by requiring inclusion of cautionary terms in follow-up written communications, we are unwilling to make that substitution. It is beyond our power to deviate from the text of a statute unless its literal application would lead either to an absurd or futile result or one plainly at odds with the policy of the whole legislation. *See American Trucking,* 310 U.S. at 543–44, 60 S.Ct. at 1064. On the facts of this case, we are constrained to

---

5. The Director's letter stated in part:
   Where the debtor has already received proper notification of the debt as required by Section 809 of the Act [15 U.S.C. § 1692g] or has been negotiating with the debt collector over the terms of repayment, ... no purpose is served by requiring that every subsequent communication with that debtor contain these disclosures. In fact, there are some circumstances where the disclosures could become increasingly intimidating, contrary to the overall intent of the Act.
   *Pressley,* 760 F.2d at 925.

follow those courts that have recently rejected *Pressley*'s reasoning, *see Carroll,* 961 F.2d at 461; *Pipiles,* 886 F.2d at 26–27; *cf. Frey,* 970 F.2d at 1520 (dicta).

■■■ The law firm next argues, however, that the FTC opinion and *Pressley* have been incorporated into the FDCPA by "legislative reenactment." Generally speaking, the doctrine of legislative reenactment assumes that when Congress reenacts legislation, it incorporates existing administrative and judicial interpretations of the statute into its reenactment. *See, e.g., Lorillard v. Pons,* 434 U.S. 575, 580, 98 S.Ct. 866, 870, 55 L.Ed.2d 40 (1978); *Bridges v. United States,* 346 U.S. 209, 221, 73 S.Ct. 1055, 1062, 97 L.Ed. 1557 (1953). The reenactment doctrine does not apply where the statutory language is "unambiguous and the regulation clearly inconsistent with it." *Massachusetts Mut. Life Ins. Co. v. United States,* 288 U.S. 269, 273, 53 S.Ct. 337, 339, 77 L.Ed. 739 (1933); *see Demarest,* 498 U.S. at 190, 111 S.Ct. at 603 ("Where the law is plain, subsequent reenactment does not constitute an adoption of previous administrative construction.") (citing *Leary v. United States,* 395 U.S. 6, 24–25, 89 S.Ct. 1532, 1541–42, 23 L.Ed.2d 57 (1969)).

Initially, the FDCPA exempted attorneys from the reach of the statute. *See* 15 U.S.C.A. § 1692a(6)(F) (West 1982) (exempting attorney-at-law collecting debt as attorney on behalf of and in name of his client). In 1986, Congress repealed subsection (6)(F). *See* Fair Debt Collection Practices Act, Amendment, Pub.L. No. 99–361, 1986 U.S.Code Cong. & Admin.News (100 Stat.) 768. In doing so, Congress intended to treat attorney and non-attorney debt collectors similarly because the prior legislation could be construed to "imply that [attorneys could] use tactics that collections agencies are prohibited from using[.]" H.R.Rep. No. 405, 99th Cong., 2d Sess. 5, *reprinted in* 1986 U.S.Code Cong. & Admin.News 1752, 1756.

The law firm argues that the repeal of the attorney exemption is a statutory reenactment that incorporated the FTC commentary, *see, e.g., Massachusetts Mutual,* 288 U.S. at 273, 53 S.Ct. at 339 (holding reenactment adopted Treasury interpretation of tax code), as well as *Pressley,* the only judicial

authority on the question in existence in 1986. *See, e.g., Lorillard,* 434 U.S. at 581–82, 98 S.Ct. at 870–71 (incorporating federal court of appeals' decisions applying statutory language); *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 414 n. 8, 95 S.Ct. 2362, 2370 n. 8, 45 L.Ed.2d 280 (1975) (acknowledging legislative incorporation of previous judicial interpretation of backpay provision of Title VII).

■■■ The Fourth Circuit was presented with the reenactment argument in *Carroll.* It stated, "While it is true that reenactment of statutory provisions generally incorporate [sic] administrative or judicial decisions, this Act was not reenacted rather, part of it was repealed." *Carroll,* 961 F.2d at 461. When Congress reenacts a whole statute, it may be a useful fiction to assume it has reviewed each provision in the context of the judicial and administrative gloss that has been put on them and decided that the court and agency decisions interpreting and implementing all the statute's provisions are consistent with Congress's intent in reenacting it. *See Lorillard,* 434 U.S. at 580–81, 98 S.Ct. at 869–70. But when Congress merely repeals a single exception to the commands of an otherwise comprehensive statute, there is no reason to suppose that it has taken a fresh look at the meaning of the whole statute as affected by judicial and administrative decisions interpreting each of its provisions and then decided that all those decisions are in accord with the legislative intent.

Repeal of an exemption from statutory coverage is not equivalent to reenactment of the whole statute. Congress made no mention of *Pressley* or any other interpretive decisions when it repealed the attorney exemption from FDCPA. Were it Congress's intent to reenact the FDCPA, we think the legislative history would show some discussion of the Act as a whole. *Cf. National Mufflers Dealers Ass'n, Inc. v. United States,* 440 U.S. 472, 477, 99 S.Ct. 1304, 1307, 59 L.Ed.2d 519 (1979) (legislative history showing consideration of prior decisions material in applying reenactment doctrine to aid in statutory interpretation). The absence of serious deliberation over subsection (11) leads us to conclude that the 1986 repeal of

the attorney exemption was nothing more than an amendment of this statute and not a reenactment.[6] The law firm cites no authority for its contention that repeal of an exemption is tantamount to a reenactment of the statute, and we are unwilling to assume Congress was aware of all the judicial and administrative gloss put on the original Act when it amended it by repealing the exemption for attorneys it once provided.

■ The law firm's third and final argument on the subsection (11) disclosure provision is that a literal interpretation of the statute is contrary to public policy because the inclusion of subsection (11) disclosures in all communications to the debtor is so burdensome that it would be at odds with Congress's intent to eliminate abusive debt collection practices without hampering an ethical debt collector's efforts to secure payment. The law firm contends literal interpretation would require the subsection's warning to appear on all settlement letters, postponement of trial letters, letters regarding depositions, interrogatories, etc., to say nothing of its articulation in phone calls or other oral communications. A requirement so broad, it says, would be contrary to Congress's intent to make the debt collection process less frightening and abusive. The law firm's quarrel about the burden this part of the statute places on it is with Congress, who chose to use the modifier "all." We apply the language of the section of FDCPA codified at 15 U.S.C.A. § 1692e(11) to the case before us. The application of subsection (11) to other types of communications that may or may not be within 15 U.S.C.A. § 1692a(2)'s definition of communications is not before us. There is no absurdity in applying the express language of subsection (11) to the facts of this case.[7]

■ Here, however, the law firm's purpose of collecting a debt is obvious on the letters' face. Therefore, they do not violate the requirement of subsection (11) that they disclose their purpose of collecting a debt. Dutton cannot reasonably contend that the letters failed to disclose that purpose. Each refers to a particular debt. Each offers to settle it in return for money. We do not think subsection (11) is a magic incantation whose ritual observance is required to avoid the sovereign's wrath. *See Pipiles*, 886 F.2d at 26.

Unfortunately for the law firm, disclosure of the purpose of collecting a debt is not all subsection (11) asks. It also requires a warning to the debtor and third parties that information received in response either to a demand for payment or a request for information may be used in aid of collection. It is easy to see how the statutory purpose is furthered by requiring a statement of the purpose for which the information will be used in letters to third parties who may not know the reason behind the collector's request for information. It is less clear, however, why this potential use of information obtained in response must be disclosed to the debtor. Once the debtor is on notice that a given communication is meant to collect a debt, one would believe that a rational consumer debtor would conclude that any material information contained in his response would be used to advance the collector's purpose of obtaining payment, not the debtor's purpose of avoiding it. Nevertheless, the statute can be read to require both disclosures in communications with debtors and third parties. *See Emanuel v. American Credit Exch.*, 870 F.2d 805, 807 (2d Cir.1989) (holding that warning must appear even where communication does not request or contemplate the return of information). The settlement letters before us do not clearly

---

6. Even if the reenactment doctrine did apply to the repeal of an exemption, it is doubtful that it would help the law firm here. The reenactment doctrine does not apply where the interpretive decision contradicts the statute's plain language. *See, e.g., Demarest*, 498 U.S. at 190, 111 S.Ct. at 603. As discussed above, both *Pressley* and the FTC interpretive memo do appear to contradict the plain language of the parts of the statute in question.

7. Of course, we do not decide whether literal application of the phrase "all communications" to every possible communication, including all oral communications, would be at cross-purposes with Congress's intent. All possible circumstances are not before us.

contain the required warning about the use of responsive information. Constrained in this respect by the text of the statute, we believe that the law firm's letters violated subsection (11) as a matter of law.

### The § 1692e(10) Claim

▆ In its two settlement letters to Dutton, the law firm stated, "When the payment is received, we will release all liens and mark the judgment Paid and Satisfied." App. at 11, 16. It is undisputed that Macy's never had a lien on any of Dutton's property. The district court sent the question whether the letters' reference to liens was misleading in this respect and so violated subsection (10) to the jury.[8] By its verdict the jury decided that the letters could be interpreted by the hypothetical consumer debtor the statute is meant to protect as falsely stating that Macy's had a lien on Dutton's property. *See Graziano v. Harrison,* 950 F.2d 107, 111 (3d Cir.1991).

The law firm argues that the letters, taken as a whole, cannot reasonably be read to imply the presence of liens on Dutton's property and therefore the district court should have granted it judgment as a matter of law on Dutton's subsection (10) claim that its letters were misleading. The firm also contends that the letters' reference to liens was not a misrepresentation because the firm had the ability to obtain a lien on Dutton's property so long as the default judgment it had secured against Dutton remained unsatisfied. It says that even if the reference to liens was a threat, it was a true statement about a legal tool legitimately available to debt collectors in pursuing their trade, not a misrepresentation.

In support, the law firm points to *Crossley v. Lieberman,* 868 F.2d 566 (3d Cir.1989). There, we held a debt collector's threat against a 68 year old widow to take action in a manner which was prohibited by applicable

Pennsylvania law violated the Act by implying the existence of a pending legal proceeding not yet begun. The firm believes that egregious circumstances were present in *Crossley* and that they were essential to our holding that the debt collector who falsely implied both the existence and the availability of a particular legal proceeding in aid of collection violated subsection (10).

The law firm also points to *Higgins v. Capital Credit Services, Inc.,* 762 F.Supp. 1128 (D.Del.1991). There, the court held that a collector who threatened to attach a debtor's personal property and garnish his wages did not violate the Act. *Id.* at 1138. Because the letter informed the debtor that the collector had been given a power of attorney to collect the debt on the creditor's behalf, the debtor argued that an unsophisticated consumer could read it to imply that an attachment had already taken place. *Id.* The district court rejected the debtor's argument, holding that a collector does not violate the FDCPA when it points out legal procedures that can be used to collect a debt if payment is not made. *Id.* (citing *Riveria v. MAB Collections, Inc.,* 682 F.Supp. 174, 177–78 (W.D.N.Y.1988)). *Higgins* is distinguishable from the present case and from *Crossley.* The letter in *Higgins* did not say that attachment had occurred, merely that it could occur absent debtor action. *Id.*

In *Crossley,* we did not have to rely on the egregious nature of the abusive acts with respect to subsection (10). Our discussion of subsection (10) in *Crossley* actually supports Dutton's position. In that context, we stated the collector "falsely represented the legal status of the debt by implying that the mortgage foreclosure case was already in litigation." *Crossley,* 868 F.2d at 571.[9]

A communication which misrepresents the fact that property is already the subject of a lien is no different. Here, a consumer debtor could interpret the law firm's letters to Dut-

---

**8.** The precise question the court asked the jury to answer was, "Did Defendant debt collector violate the Fair Debt Collection Practices Act by the use of any false representation or deceptive means to collect or attempt to collect a debt or to obtain information concerning the consumer?" App. at 128.

**9.** In *Crossley,* we also held that a threat to commence a judicial proceeding "within one week"

when Pennsylvania law required a debtor be given thirty days notice of intent to sue violated subsection (5) of the Act. *Crossley* also involved subsection (5). Subsection (5) prohibits "[t]he threat to take any action that cannot legally be taken...." 15 U.S.C.A. § 1692e(5). That particular misrepresentation is not required by subsection (10).

ton to state that liens already existed when the letters were written. That is all subsection (10) requires. The district court did not err in permitting the jury to decide whether the letters falsely represented that Macy's already had a lien, or instead merely pointed out that Macy's had the right to obtain a lien on Dutton's property and use that lien to force payment of the debts the store claimed he owed it.

The law firm says in its letters, "We will release all liens if you pay this." It creates a question for the jury as to the present existence of liens. When the jury determined it did imply existing liens, it properly found a violation of subsection (10).

For the foregoing reasons, we conclude that the firm's settlement letters violated the FDCPA. Therefore, we will affirm the judgment of the district court. Each side will bear its own costs.