Darlene **ANTHES**, Plaintiff,

v.

**TRANSWORLD SYSTEMS, INC., Defendant.**

**Civ. A. No. 90–257–JLL.**

United States District Court, D. Delaware.

May 16, 1991.

---

O. Randolph Bragg of UAW Legal Services Plan, Newark, Del., for plaintiff.

Lawrence S. Drexler and William D. Sullivan of Elzufon, Austin & Drexler, Wilmington, Del., for defendant.

## MEMORANDUM OPINION

LATCHUM, Senior District Judge.

This suit was brought by Darlene Anthes against Transworld Systems, Inc. ("TSI"), on May 30, 1990, for alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* (Docket Item ["D.I."] 1). The plaintiff has alleged at least twelve separate violations of the FDCPA arising from five letters received by her from June to August of 1989. The Court has jurisdiction pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

Presently before the Court is the plaintiff's motion for summary judgment on the issue of liability and the defendant's motion for summary judgment. (D.I. 33 & 36). Discovery has been closed and the cross-motions fully briefed. (D.I. 20). The Court heard oral argument on the above motions on April 26, 1991.

The five letters in issue were sent to Mrs. Anthes in an effort to collect $320.00 she owed to a Dr. Kalamchi for medical

services. (D.I. 38 at Exhibit ["Ex"] 3, pp. 11–13; Ex 6; Ex 8). The five letters were: 1) a "Transmittal" letter from TSI with "Remittance Voucher" dated June 15, 1989 ("the first TSI letter");[1] 2) a letter from TSI on its letterhead dated June 29, 1989 ("the second TSI letter"); 3) a second "Transmittal" letter from TSI dated July 13, 1989 ("the third TSI letter"); 4) a letter from Peter David Rubin, Esq. dated July 27, 1989 ("the Rubin letter");[2] and 5) a third "Transmittal" letter from TSI dated August 10, 1989 ("the fourth TSI letter"). (D.I. 38 at Ex A, B, C, D & E).

## SUMMARY JUDGMENT STANDARD

The Court can grant a movant's motion for summary judgment under Federal Rule of Civil Procedure 56(c) "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Put differently, "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original).

The movant has the initial burden of establishing that no genuine issue of material fact exists or that a material fact essential to the non-movant's claim is absent. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Once the movant has met its burden, the onus is on the non-movant to establish that there is a genuine issue of material fact. *Id.* at 324, 106 S.Ct. at 2553. In order to meet this burden, the non-movant "may not rest upon the mere allegations or denials of [its] pleading," but must instead "set forth specific facts showing

that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553.

An issue of fact is *material* if, under the substantive law of the case, resolution of the factual dispute could affect the outcome of the case. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. Factual disputes are *genuine* if they "properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511. On the other hand, if after the Court has drawn all reasonable inferences in favor of the non-moving party,[3] "the evidence is merely colorable, or is not significantly probative, summary judgment may be granted" because the factual dispute is not genuine. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511 (citations omitted).

The filing of cross-motions for summary judgment by the parties does not empower the Court to decide genuine issues of material fact. *Tomalewski v. State Farm Life Ins. Co.*, 494 F.2d 882, 884–85 (3d Cir.1974); *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir.1968). Nor is the Court required to grant summary judgment in favor of one party or the other simply because cross-motions have been filed; genuine issues of material fact may still exist. *Tomalewski*, 494 F.2d at 884–85; *Rains*, 402 F.2d at 245; *Krupa v. New Castle County*, 732 F.Supp. 497, 505 (D.Del.1990).

## DISCUSSION

I. *The Letter From Peter David Rubin, Esq.*

Anthes alleges that the Rubin letter violates the FDCPA in five respects and that TSI is liable for these violations. The pro-

---

**1.** The original copy of this letter could not be located by the parties. The letter in the record is a copy of a form letter similar in all relevant respects to that sent to the plaintiff.

**2.** The original, at first, could not be located so the defendant provided a copy of the form letter mailed by Rubin. This copy is part of the record. The original was subsequently found by the plaintiff on March 6, 1991. (D.I. 46 at 3).

**3.** All reasonable inferences must be drawn in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986); *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

visions of the FDCPA allegedly violated are the § 1692e prohibitions on:

The false representation or implication that any individual is an attorney or that any communication is from an attorney. 15 U.S.C. § 1692e(3).

The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization. 15 U.S.C. § 1692e(14).

The threat to take any action that cannot legally be taken or that is not intended to be taken. 15 U.S.C. § 1692e(5).

The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. 15 U.S.C. § 1692e(10).

The plaintiff further alleges that the defendant violated § 1692j(a) which states:

It is unlawful to design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating. 15 U.S.C. § 1692j(a).

The Court will address each of these claims.

1. The § 1692e(3) Claim

Section 1692e(3) asks the following question. Would a least sophisticated debtor believe a dunning letter is from an attorney, when in fact, it is from a non-attorney debt collector? The obvious threshold question is whether the correspondence in issue is from an attorney or not. Factually, the plaintiff in this case cannot cross this threshold. Peter David Rubin, Esq. is an attorney licensed to practice law in the State of California. (D.I. 38 at Ex 5). The Rubin letter was in fact sent by Rubin from his law office, and TSI, therefore, did not falsely represent that it was an attorney.

The plaintiff, nonetheless, asserts that TSI is the true sender of the Rubin letter because Rubin is allegedly nothing more than a "mailing service" for TSI. As the plaintiff explains: "Obviously, Attorney Rubin functions as a mailing service for the Defendant; his only activity is to send he (sic) fourth letter in a series of five." (D.I. 50 at 10). The plaintiff reaches this conclusion because Rubin has no contact with the creditor, does not investigate debts, does not bring suit against debtors for TSI, and uses a manufactured replica of his signature. (*Id.*) But these facts cannot, in and of themselves, transform the Rubin letter into a letter from TSI.

Admittedly, Peter David Rubin, Esq. does not file suit against the targets of TSI's collection efforts (D.I. 35 at A–82), nor does he make recommendations as to whether suit should be filed. (*Id.* at A–31). Rubin's only role in the debt collection process is to send a dunning letter to selected debtors. (*Id.* at A–75). These letters urge debtors to contact their creditors. (D.I. 38 at Ex D). But Rubin is not an employee of TSI (D.I. 35 at A–75), nor is he paid for each letter he sends out on behalf of TSI. (*Id.* at A–76). Rubin receives a set retainer for the services he provides to TSI. (*Id.*) At some point in the collection process, TSI routinely sends the names of debtors who have not yet paid their debts, to Rubin's office. (*Id.* at A–77 to A–78). TSI provides Rubin with more information concerning these debtors than is originally provided to TSI by creditors. (*Id.* at A–78). Though Rubin does not independently investigate the validity of debts (*id.* at 105), he uses the information provided to him by TSI to independently determine whether one of his letters should be sent. (D.I. 38 at Ex 5). If Rubin decides that a letter would be appropriate, his office sends a letter directly to the debtor in question. (D.I. 35 at A–77). The letter is sent from his office, on his stationary, with his name, address, telephone number and signature on the document. (D.I. 35 at A–77; D.I. 38 at Ex D & 5). A reasonable trier of fact would have to find that Peter David Rubin, Esq. is an independent attorney retained by TSI to send debt collection letters in his own name.

TSI did not send the Rubin letter, or falsely suggest that TSI is an attorney. The plaintiff's § 1692e(3) claim therefore lacks merit. No violation of § 1692e(3) occurred and the defendant's motion for summary judgment will be granted with respect to this claim.[4]

### 2. The § 1692e(5) & (10) Claims Arising From The Contents of the Rubin Letter

■ In this suit against TSI, the plaintiff seeks to hold TSI liable for the content of the Rubin letter. The content of the Rubin letter allegedly violates 15 U.S.C. §§ 1692e(5) and (10). These claims must fail because TSI is not responsible for what Rubin writes in his letters. Mr. Rubin alone is responsible for the content of letters sent from his office, on his stationary, in his name. Further, since Rubin is not a defendant in this action the Court lacks jurisdiction to hear these claims. The Court will therefore grant summary judgment in favor of the defendant and against the plaintiff with respect to the plaintiff's claims against TSI arising from the content of the Rubin letter. The plaintiff has sued the wrong party.

The Court does not mean to suggest that the FDCPA cannot reach allegedly deceptive language in a letter such a Mr. Rubin's. Mr. Rubin may in fact be a debt collector within the terms of the FDCPA. A separate suit against Rubin, brought within the one year statute of limitations of § 1692k(b)(d), may have been the appropriate way to proceed.

### 3. The § 1692e(14) Claim

■ As explained in section I.1 of this opinion, the Court has found, as a matter of law, that the Rubin letter was not a letter from TSI. Factually, therefore, there is no basis for the claim that the Rubin letter constituted the use, by TSI, of a name other than its own. Rubin sent the letter in his own name. The defendant's motion for summary judgment will therefore be granted with respect to TSI's alleged violation of § 1692e(14) arising from the Rubin letter.

### 4. The § 1692j(a) Claim

■ Section 1692j(a) makes it unlawful to "design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of ... a debt...." 15 U.S.C. 1692j(a). This section imposes liability on parties who provide *creditors* with dunning letters that create a *false* impression that someone other than the creditor is trying to collect the debt. FTC Official Staff Commentary, § 812, 53 Fed.Reg. 50,097 (1988). This prohibits what is commonly referred to as "flat rating." As the legislative history of the FDCPA explains:

> Another common collection abuse is known colloquially as "flat-rating." A "flat-rater" is one who sells to creditors a set of dunning letters bearing the letter-head of the flat-rater's collection agency and exhorting the debtor to pay the creditor at once. The creditor sends these letters to his debtors, giving the impression that a third party debt collec-

**4.** *Cf. Masuda v. Thomas Richards & Co.,* 759 F.Supp. 1456 (C.D.Cal.1991) (debt collector violated § 1692e(3) even though independent attorney signed dunning letter because, in pertinent part, attorney did not review debtor's file, attorney did not send the letter, attorney's address and telephone number were not on his stationary, and debtor was told to contact the debt collector directly). Consideration of these same factors suggests that in the present case the Rubin letter was not from TSI and that there is no basis for a § 1692e(3) claim.

The *Masuda* court expands § 1692e(3) to incorporate issues more appropriately addressed in a claim under § 1692e(10). Such issues are whether "the letter implies to the recipient that [the debt collector] considers the debt more serious than [the debt collector], in fact, considers it to be" because the letter is from an attorney, *Masuda* at 1461, or the letter misrepresents "to the consumer that an attorney has reviewed [the debtor's] file and is about to file a law suit" when no such review has taken place. *Id.* at 1461–62. Addressing these issues under § 1692e(3) obfuscates the central prohibition of § 1692e(3), namely, that "impersonating an attorney" is a violation of the FDCPA. S.Rep. No. 382, 95th Cong., 1st Sess. 8, *reprinted in* 1977 U.S.Code Cong. & Admin.News 1695, 1702.

tor is collecting the debt. In fact, however, the flat-rater is not in the business of debt collection, but merely sells dunning letters.

This bill prohibits the practice of flat-rating because of its inherently deceptive nature.

S.Rep. No. 382, 95th Cong., 1st Sess. 5, *reprinted in* 1977 U.S.Code Cong. & Admin.News 1695, 1699. *See Littles v. Lieberman*, 90 B.R. 700, 715–16 (E.D.Pa.1988). For several reasons, the plaintiff's § 1692j(a) claim cannot succeed.

First, § 1692j(a) only applies to situations were a third party provides a creditor with dunning letters. This is clear from both the language of the statute and the legislative history.[5] In the present case there is no evidence, or even an allegation, that anyone provided the creditor, Dr. Kalamchi, with dunning letters.

Second, the Rubin letter did not create any *"false belief"* that parties other than the creditor were trying to collect the Anthes debt. Another party, namely TSI, was in fact involved in the collection effort. *Bingham v. Collection Bureau, Inc.*, 505 F.Supp. 864, 871 (D.N.D.1981) (§ 1692j(a) claim failed because debtor's belief that others were involved in the collection effort was not false).

Third, a defendant can be either a "debt collector" or a "flat rater," but not both. *In re Scrimpsher*, 17 B.R. 999, 1010–12 (Bankr.N.D.N.Y.1982). The parties agree that under § 1692a(6) of the FDCPA, TSI is a debt collector. Since § 1692j only applies to "flat raters," *In re Scrimpsher*, 17 B.R. at 1011, TSI cannot be liable under § 1692j(a). Rubin's role does not have to be addressed because he is not a party to the present suit.

For the above reasons, the Court will grant the defendant's motion for summary judgment with respect to the § 1692j(a) claim arising from the Rubin letter.

### 5. The Plaintiff's Alternative § 1692e(10) Claim

The plaintiff claims that TSI routinely asks Peter David Rubin, Esq. to send collection letters to debtors after TSI's initial collection efforts have failed. A reasonable trier of fact could find that a routine referral of names to Mr. Rubin is a deceptive practice under § 1692e(10). If Rubin's collection efforts are essentially no different than TSI's, and the jury finds that TSI's referral of debts to Rubin deceives least sophisticated debtors into believing that collection efforts against them have entered a new and more serious stage involving lawyers, when they have not, then this practice could be deceptive within the meaning of § 1692e(10).[6] On the other hand, if the jury accepts TSI's assertion that TSI has Rubin send his letter because it seeks to ensure that the subjects of TSI's collection efforts know their rights, then the defendant will be entitled to judgment. Because genuine issues of material fact exist, the parties' cross-motions for summary judgment on this claim will be denied.

## II. *The Four Letters From TSI*

### 1. The § 1692e(11) Claims

15 U.S.C. § 1692e(11) states in pertinent part that "the failure to disclose clearly in all communications made to collect a debt or to obtain information about a consumer, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose," is a violation of the act. The defendant included the required notice in

---

**5.** The language of § 1692j(a) limits the section's applicability to situations where dunning letters are provided to the creditor. If § 1692j(a) were interpreted to cover situations where a flat-rater provides deceptive forms to a debt collector who uses the forms, the language "other than the creditor of such consumer" would be entirely superfluous. As the statute is written, it appears to only prohibit "flat-rating" involving creditors. To the extent that the statute is

vague, the legislative history clearly supports the Court's reading of the statute. This reading of the statute does not create a gap in FDCPA coverage. In situations where a debt collector uses deceptive forms obtained from a flat-rater, other provisions of the FDCPA would apply to impose liability on the debt collector.

**6.** *Cf. Masuda* at 1461–62.

each of its correspondences with the plaintiff. The plaintiff nonetheless contends that § 1692e(11) was violated because: (1) the notice was in smaller type than the body of the letter; (2) the notice was at the bottom of the page; and (3) the notice was allegedly "overshadowed" by the language in the body of the letters.[7]

The standards by which a Court determines the adequacy of § 1692e(11) and § 1692g(a) notices are the same. In *Smith v. Financial Collection Agencies*, Civil Action No. 90–120–LON, slip op. at 7 (D.Del. April 10, 1991), the Court summarized the case law concerning the size and location of § 1692g(a) notices, and whether they were adequate. The Court noted that "a validation notice satisfies the statute if the information given in the notice is large enough to be easily read and sufficiently prominent to be noticed by the least sophisticated debtor." *Id.* (citation omitted). In the present case, there is no issue of material fact with respect to this claim. The § 1692e(11) notices appear in every TSI letter. The notices are clear and readable, and should be noticed by even the least sophisticated of debtors. The defendant has complied with the statute.

The plaintiff's claim that the § 1692e(11) notices were overshadowed is entirely without merit. Nothing in the text of the letters overshadows or even contradicts the message that "Transworld Systems Inc. is a licensed collection agency and any information obtained from [the debtor] will be used for the purpose of collecting this debt." (D.I. 38 at Ex A). If anything, the language of the collection letters reinforces the warning that TSI is a collection agency trying to collect a debt.[8] *See Smith* at 15.

The Court will therefore grant the defendant's motion for summary judgment on this claim and deny that of the plaintiff.

2. The § 1692g(a) Claim.

Under § 1692g(a) of the FDCPA a debt collector must notify a debtor that: (1) the debtor has 30 days to dispute the validity of the debt, after which the collector will assume the debt to be valid; (2) if the debtor notifies the collector, in writing, within 30 days, that all or part of the debt is disputed, the collector must then obtain verification of the debt, or a judgment, and send it to the consumer; and (3) if a written request is made within 30 days, the collector will provide the debtor with the name and address of the original debtor if it is different from the present debtor. 15 U.S.C. § 1692g(a). It is undisputed that the content of TSI's § 1692g(a) notices was adequate. Instead, the plaintiff's claim is that TSI's notices, due to their size, location, and context, were inadequate.

The three notices required by § 1692g(a) are included in TSI's first letter to Anthes. (D.I. 38 at Ex A). The § 1692g(a) notices only have to be given once[9] and therefore do not appear in TSI's later correspondences with Anthes. These notices (which the Court will refer to collectively as the "vali-

---

7. In addressing the plaintiff's overshadowing claims under 15 U.S.C. §§ 1692e(11) and 1692g(a) the Court will consider the language in all the letters together, and not just the language of the letter containing a particular notice. *See Higgins v. Capitol Credit Services, Inc.*, 762 F.Supp. 1128, 1133 (D.Del.1991) (overshadowing claim under § 1692g(a) necessitates consideration of the entire series of letters).

8. In addition to the standard § 1692e(11) notices, the defendant has provided notices reiterating that TSI's letters are from a collection agency. These notices further ensure that the § 1692e(11) notices will not be overshadowed and that TSI's letters conform with § 1692e generally. Section 1692e broadly prohibits conduct that is false, deceptive, or misleading to a least sophisticated debtor. Specifically, each of TSI's "TRANSMITTAL" letters state, at the top, in clear print: "THIS HAS BEEN SENT TO YOU BY A COLLECTION AGENCY." The one letter sent on TSI's letterhead lists TSI's businesses at the bottom of the letter, and in very large bold print states: "COLLECTION DIVISION." Taken as a whole, the documents clearly notify the debtor that the letters are from a collection agency that is attempting to collect a debt. As noted above, the debtor is also informed that any information provided will be used for purposes of collecting a debt. This latter notice is less relevant to the inquiry of whether the letters are false, deceptive, or misleading because TSI has not requested any information from the plaintiff.

9. *Smith* at 4–5; *Higgins* 762 F.Supp. at 1133; FTC Official Staff Commentary § 809(a)(2), 53 Fed.Reg. 50,097 (1988).

dation notice") were located below the text of the June 15, 1989 letter, but above the detachable "Remittance Voucher." The location and length of the validation notice made it more prominent than the § 1692e(11) notices. The validation notice was four lines of text located two-thirds of the way down the letter. The § 1692e(11) notices, on the other hand, were either one or two lines of text and were located at the bottom of the page. The type size of the validation notice was the same as that used for the § 1692e(11) notices. Given the Court's conclusion that, as a matter of law, the § 1692e(11) notices could be "easily read" and were "sufficiently prominent to be noticed, even by the least sophisticated debtor," the Court concludes that, with respect to appearance, the more prominent validation notice also comports with the FDCPA's requirements. The type size, location, and length of the notice are undisputed and no rational trier of fact could find the appearance of the validation notice inadequate.

The plaintiff's "overshadowing" claim is more complicated. An otherwise adequate notice can nonetheless be inadequate if it is "grossly overshadowed" by language in the body of the letter. *Smith* at 7. There is no "gross overshadowing" unless the language of the letter stands in "threatening contradiction" to the statutorily required notice. *Id.* Some contradiction, or slight overshadowing, is insufficient. The contradiction between the notice and the text must be so great, and the language of the letter so strong, that a least sophisticated debtor would feel compelled to disregard the statutorily required notice. Further, language designed to encourage payment of the debt does not, in and of itself, overshadow a validation notice. The FDCPA clearly permits a debt collector to pursue debts during the 30 day period in which the debtor can contest the debt. *Smith* at 12; *Higgins v. Capitol Credit Services, Inc.,* 762 F.Supp. 1128, 1135 (D.Del.1991); 15 U.S.C. § 1692g(a) (the validation notice need not be sent until five days after the first contact by the collector); FTC Official Staff Commentary § 809(b)(1), 53 Fed.Reg. 50,097 (1988).

Since the payment requests in TSI's letters are unexceptional and certainly not "threatening," the plaintiff has failed to provide sufficient facts by which a reasonable trier of fact could find that the language requesting payment "grossly overshadows" the validation notices. The only possible violation of § 1692g(a) is TSI's statement in its third letter that the debt is "now assumed to be valid," because this statement may have overshadowed a technical provision of § 1692g(a).

The first TSI letter sent to Anthes was dated June 15, 1989. This letter contained the § 1692g(a) validation notice. The second letter from TSI, which is dated June 29, 1989, reads, in part: "IMPERATIVE—GRACE PERIOD EXPIRED." A third letter, which is dated July 13, 1989, states, among other things: "SINCE VALIDITY OF THIS LONG OVERDUE ACCOUNT HAS NOT BEEN DISPUTED, IT IS NOW ASSUMED TO BE VALID." The fourth TSI letter in issue was dated August 10, 1989. The question is whether the above quoted language stands in such "threatening contradiction" to the validation notice that the notice is "grossly overshadowed." The Court concludes that as a matter of law, the language in the June 29 letter does not "grossly overshadow" the validation notice, while the language in the July 13 letter may.

The required validation notice does not give the debtor a "grace period," and TSI's notice does not mention one. If a "grace period" from collection efforts was given, it was wholly gratuitous on the part of TSI. Under the FDCPA, collectors can pursue debts during the first 30 days after contacting the debtor. The withdrawal of a gratuitously given "grace period" does not stand in "threatening contradiction" to a notice which states:

All portions of this claim shall be assumed valid unless disputed within thirty days of receiving this notice. If disputed in writing, verification of the debt will be provided to you. If the original creditor is different from the above named credi-

tor, the name of the original creditor will also be provided.

(D.I. 38 at Ex A.) As a matter of law, the "IMPERATIVE—GRACE PERIOD EXPIRED," language does not violate § 1692g(a).

 The language in the third letter is significantly different. The July 13 letter states that the debtor has failed to contest the validity of the debt and that the debt collector now assumes that the debt is valid. If this statement was received by the plaintiff less than 30 days after she received the validation notice, it would directly contradict the notice's statement that she had 30 days to contest the debt.[10] The third letter would therefore "grossly overshadow" the earlier validation notice and violate § 1692g(a) of the FDCPA.

The plaintiff has established that the first TSI letter was dated June 15, 1989 (D.I. 35 at A–20), and the third, July 13, 1989. (*Id.* at A–8). Both of these dates fell on Thursdays and were 28 days apart. It is uncontroverted that the defendant routinely sends out its letters on a two-week cycle. (*Id.* at A–29). But, as noted before, it is the date of receipt and not the date of mailing that is relevant for FDCPA purposes, and the plaintiff has not established the dates upon which the letters were *received*. Since a genuine issue of material fact still remains, summary judgment for either party on this particular claim would be inappropriate. The parties' cross-motions for summary judgment on the issue of whether TSI's July 13 letter violated § 1692g(a), because the letter stated that the debt "IS NOW ASSUMED TO BE VALID," will accordingly be denied. Summary judgment will be entered against the plaintiff and in favor of the defendant with respect to the remaining claims arising under § 1692g(a).

### 3. The § 1692e(10) Claim

According to the plaintiff, TSI's letters "are designed to mislead, pressure and frighten the consumer" (D.I. 34 at 26) and thus constitute "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer" in violation of § 1692e(10). Essentially, the plaintiff relies on her other claims as evidence that § 1692e(10) has been violated. The Court concludes that, as a matter of law, none of the plaintiff's claims discussed in part II of this opinion, gave rise to actual damages. This is even true of the § 1692g(a) claim that must go to the jury.

 Anthes' only surviving § 1692g(a) claim is that she may have received TSI's third letter two days sooner than she should have. Even if this is true, this would be a very technical violation that simply does not amount to a "false representation or deceptive means to collect or attempt to collect any debt," in violation of § 1692e(10). There is no evidence that suggests the defendant sent the letter two days early with the expectation that this would enable it to collect the debt. TSI's premature mailing of its third letter was not, in itself, an effort to collect a debt. The Court concludes that § 1692e(10) is inapplicable to these facts. The defendant's motion for summary judgment on this claim will therefore be granted and the plaintiff's motion for summary judgment denied.

### III. *Separate Claims Arising From TSI's August 10, 1989 Letter*

#### 1. The § 1692e(14) Claim

 Section 1692e(14) prohibits "[t]he use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization." At first glance, this section appears to only prohibit a debt collector from falsely giving the impression that its communications are from a third party. Interpreted this way, TSI did not violate § 1692e(14). TSI's August 10, 1989 letter clearly and accurately indicates that TSI is the sender of the letter. TSI's reference to Credit Management Services ("CMS") in the body of the letter does not confuse the issue of who the letter is from. But there is some support for the plaintiff's proposi-

---

**10.** A violation occurs when the offending letter is received, not when it is sent.

tion that § 1692e(14) prohibits more conduct than is suggested by the statute's language. *See* FTC Official Staff Commentary § 807(14), 53 Fed.Reg. 50,097 (1988) (particularly the portion discussing names used by debt collection divisions of *creditors* ).[11]

The plaintiff claims that CMS and TSI are the same entity and that therefore, TSI violated § 1692e(14) when it wrote to Anthes and told her that her account might be "TRANSFERRED TO THE CREDIT MANAGEMENT SERVICES OFFICE NEAREST [HER] FOR PERSONAL ATTENTION BY THEIR STAFF." The argument is that TSI has created a false impression that a new collector is involved in the collection of her debt, when in fact, CMS is nothing more than a different name for TSI. The least sophisticated debtor is misled, Anthes argues, because TSI has used a name other than its own, namely CMS, in its efforts to collect debts.

▮▮▮ The statute does not explain when the use of different names is appropriate, but does offer some guidance. Section 1692e(14), like the other provisions of § 1692e, only prohibits conduct that is false, deceptive, or misleading. It follows from the above, that a debt collector can use other names only to the extent that their use is not false, deceptive, or misleading. To succeed on her claim, therefore, Anthes must prove that TSI's practice of referring to CMS is false, deceptive, or misleading. The Court concludes that, as a matter of law, the plaintiff cannot meet this burden. The undisputed facts indicate that CMS is a sufficiently distinct entity with sufficiently different functions, such that TSI's reference to CMS as a separate collection office is not false, deceptive, or misleading.

The president of CMS is a vice-president at TSI (D.I. 35 at A–44) and CMS draws on bank accounts which are set up under the name "Transworld Systems, Inc. d/b/a Credit Management Services." (D.I. 44 at 2). In Pennsylvania, CMS is registered "as a dba of TSI" (*id.*), and George McCauley, the president of CMS, has described CMS as "TSI d/b/a CMS." (D.I. 35 at A–92). Generally, TSI also recommends to its clients that uncollected accounts be referred to CMS. (D.I. 35 at A–89). But the distinctions between TSI and CMS are more numerous and more relevant. CMS is a registered trade name. (D.I. 43 at Ex 9; D.I. 44). Accounts are not automatically referred from TSI to CMS. TSI must first get the creditor's permission because different fees are involved. TSI is a "prepaid third-party debt collection service," while CMS operates on a contingency fee basis. (D.I. 35 at A–48 to A–49). CMS and TSI also perform different services. TSI's sole collection function is to mail out collection letters. (D.I. 35 at A–50 & A–81). CMS on the other hand, advises clients as to whether suit should be brought. (D.I. 35 at A–31). If CMS advises that a suit is appropriate, and the client agrees, CMS is responsible for hiring local counsel and seeing that the suit is diligently prosecuted. (*Id.*). TSI and CMS also maintain separate offices even in cities where they both have employees. (Statement by Mr. Drexler at Oral Argument held on April 26, 1991). TSI and CMS also have different manuals and operating procedures. (*Id.*; D.I. 43 at Ex 14). Finally, TSI and CMS have different client lists. TSI's reference to CMS in its August 10 letter properly alerted the debtor that the collection of her debt had entered a new phase that would involve more rigorous collection efforts. The reference to CMS was not false, deceptive, or misleading. The plaintiff has not present-

---

**11.** The Court is not persuaded that there is anything more to § 1692e(14) than has already been discussed. The practice Congress appears to have intended to prohibit by enacting § 1692e(14) is the practice whereby debt collectors misrepresent that they are credit bureaus. S.Rep. No. 382, 95th Cong., 1st Sess. 8, *reprinted in* 1977 U.S.Code Cong. & Admin.News 1695, 1702 ("*False or misleading representations.*—A debt collector is prohibited from using any false, deceptive or misleading representations to collect debts. The following enumerated practices are violations: ... misrepresenting a collection agency as a credit bureau.") In any event, the claim made by the plaintiff is covered by other provisions of the FDCPA. The Court will nonetheless address the plaintiff's argument because it forces the Court to consider issues relevant to a § 1692e(10) claim which has also been raised by the plaintiff.

ed sufficient facts to survive a motion for summary judgment on this claim. The defendant's motion for summary judgment will therefore be granted.

The Court also notes that at this stage it would be inequitable to treat TSI and CMS as a single entity. The plaintiff has already settled a separate suit brought against CMS. (D.I. 43 at Ex 10). For purposes of that settlement, the plaintiff tacitly recognized CMS as a separate entity. Now, in her suit against TSI, the plaintiff has asked the Court to treat CMS and TSI as one entity so that she can make a claim under § 1692e(14). This, the Court will not do.

### 2. The § 1692e(10) Claim

Section 1692e(10) prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." In section III.1 of this opinion, the Court concluded that the plaintiff lacked sufficient evidence to prove that the reference to CMS in the August 10, 1989 letter was false, deceptive, or misleading. For the same reasons, reference to CMS was neither a false nor a deceptive means designed to collect a debt. The Court will therefore grant the defendant's motion for summary judgment on the plaintiff's § 1692e(10) claim.

### 3. The § 1692e(5) Claim

The plaintiff contends that the statement "UNLESS TIMELY PAYMENT IS MADE, WE WILL RECOMMEND TO OUR CLIENT THAT THIS CLAIM BE TRANSFERRED TO THE CREDIT MANAGEMENT SERVICES OFFICE NEAREST YOU FOR PERSONAL ATTENTION BY THEIR STAFF" violates § 1692e(5) because it is a threat to take action that cannot legally be taken.[12] The basis of the plaintiff's claim is that CMS is not licensed in Delaware pursuant to 30 *Del.C.* § 2301(a)(13) (Supp.1990).[13] This claim puzzles the Court. Whether CMS has paid a $75.00 annual license tax to the State of Delaware is irrelevant to the issue of whether TSI violated a law when it threatened to recommend that the creditor transfer the debtor's account to CMS. TSI's recommendation that the creditor transfer the Anthes account to CMS does not itself violate 30 Del.C. § 2301(a)(13). In any event, there is no evidence that § 2301(a)(13) of the Delaware Code applies to CMs. This tax provision only applies to the collectors of *commercial* debts. The Anthes debt is indisputably a *consumer* debt. If it were not a consumer debt, under the FDCPA this Court would lack jurisdiction to hear the plaintiff's case. 15 U.S.C. §§ 1692a(5) and 1692k(d).

There is absolutely no evidence in the record that TSI violated any law when it informed Anthes that it might recommend that her account be transferred to CMS. The plaintiff's assertion that CMS may owe a $75.00 license tax does not impose liability on TSI under § 1692e(5). The defendant's motion for summary judgment on this claim will therefore be granted.

### CONCLUSION

For the reasons stated in the Court's above discussion, the plaintiff's motion for summary judgment on the issue of liability will be denied, and the defendant's motion for summary judgment will be granted in

**12.** Section 1692e(5) also prohibits a debt collector from threatening to take action that it does not intend to take. Since TSI did in fact refer the plaintiff's account to CMS, this portion of § 1692e(5) is not in issue.

**13.** (a) Persons ... engaged in the occupations listed and defined in this section shall pay annual license taxes at the rates specified below.

\* \* \* \* \* \*

(13) *Mercantile agency or collection agency,* $75. "Mercantile agency" or "collection agency" includes every person operating a business of investigation of financial ratings and credit and/or the collection of commercial accounts for other persons, except attorneys-at-law having a license to practice such profession in this State.
30 Del.C. § 2301(a)(13) (Supp.1990).

**174**

part and denied in part. Five issues therefore remain for trial.

1. The Court will deny the parties' cross-motions for summary judgment on Anthes' claim that TSI violated § 1692g(a) by informing her that her 30 day period to contest her debt had expired, when in fact, it had not. In order to resolve this claim, the trier of fact will have to address two issues.

a. The trier of fact will first have to determine whether Anthes received the June 15 and July 13 TSI letters less than 30 days apart. If she did, a technical violation of the act will have occurred.

b. If the trier of fact finds that § 1692g(a) was violated, the trier of fact will then have to consider the appropriate amount of statutory damages. No actual damages are available for this technical violation of the statute.

2. With respect to the claim that TSI's practice of having Peter David Rubin, Esq. send collection letters violated § 1692e(10), both parties' motions for summary judgment will be denied. This raises three issues for trial.

a. The trier of fact will first have to determine whether the above practice constitutes a "deceptive means" to collect a debt in violation of § 1692e(10).

b. If TSI's practice is found to be "deceptive," the trier of fact will then have to determine the appropriate measure of actual damages. Those are damages Anthes suffered because she received a collection letter sent from an attorney, not damages caused by the content of the Rubin letter.

c. Additionally, if TSI's practice is found to be "deceptive," the trier of fact will have to determine the appropriate measure of statutory damages.

An appropriate Order will be entered.