**Vadonna M. PIPILES,**
**Plaintiff–Appellant,**

v.

**CREDIT BUREAU OF LOCKPORT,**
**INC., Defendant–Appellee.**

**No. 644, Docket 88–7802.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 23, 1989.

Decided Sept. 18, 1989.

O. Randolph Bragg, UAW–GM Legal Services Plan, Newark, Del. (Joseph Rotella and Robert Scheffer, Lockport, N.Y., of counsel), for plaintiff-appellant.

Willard H. Harris, Jr., Lockport, N.Y., for defendant-appellee.

Before NEWMAN, PIERCE and MAHONEY, Circuit Judges.

MAHONEY, Circuit Judge:

Plaintiff–Appellant Vadonna Pipiles ("Pipiles") appeals from a judgment entered, after a bench trial, in the United States District Court for the Western District of New York, John T. Curtin, *Judge*, dismissing her complaint alleging various violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692–1692*o* (1982 & Supp. V 1987) (the "FDCPA"), by defendant-appellee the Credit Bureau of Lockport, Inc. (the "Bureau"). The complaint alleges six violations of the FDCPA and two violations of the New York General Business Law. On appeal, Pipiles addresses three of the six violations of the FDCPA and a fourth violation thereof not stated in her complaint. We consider the issues presented on appeal.

This case is based primarily upon a document entitled "48 HOUR NOTICE" mailed by the Bureau to Pipiles on April 9, 1987 (the "Notice"). Pipiles charges that the Notice (1) misrepresented the character and amount of a debt in violation of 15 U.S.C. § 1692e(2)(A) (1982); (2) threatened action that was not intended to be taken in violation of 15 U.S.C. § 1692e(5) (1982); (3) used a false representation or deceptive means to collect or attempt to collect a debt in violation of 15 U.S.C. § 1692e(10) (1982); and (4) failed to disclose clearly that the Bureau was attempting to collect a debt and that any information obtained would be used for that purpose, in contravention of 15 U.S.C. § 1692e(11) (1982).

In an oral opinion at the conclusion of trial, the district court dismissed the complaint and directed entry of judgment for the Bureau. For the reasons that follow, we find violations of the FDCPA, and reverse and remand for an award of costs and an attorney's fee to Pipiles.

*Background*

An indebtedness of $35.00 owed by John T. Julius ("Julius"), ex-husband of Pipiles, for services rendered to Julius' subsequent spouse, Patricia, by Cardiology Associates was referred to the Bureau for collection on April 17, 1986. On March 3, 1987, a further indebtedness of $100.00 purportedly owed by Julius for dental work performed on Tina Julius, the daughter of Julius and Pipiles, by Drs. Sippel, Doyle and Murray was referred to the Bureau for collection. The Bureau thereupon sent a written communication to Julius, who came to the Bureau on March 6, 1987 with a copy of the decree divorcing him from Pipiles, which provided *inter alia* that "[Julius] shall maintain health and hospitalization for the minor issue of the marriage with any medical, dental, visual or similar bills to be split equally between the parties hereto." The decree does not identify these minor issue by name, but it is clear from there are two such issue.

Robert B. Emerick ("Emerick"), president of the Bureau, testified that he thereupon sent an initial form letter to Pipiles on March 7, 1987 concerning the $135.00 indebtedness which included the statement: "This is an attempt to collect a debt. Any information obtained will be used for that purpose." Pipiles denied receipt of the letter, but the district court accepted Emerick's testimony that it was sent. A further notice, in the same format as the Notice which is the subject of this litigation, was

sent to Julius on April 1, 1987, resulting in his payment of $85.00 to the Bureau on April 13, 1987 (*i.e.*, the full amount of the $35.00 indebtedness to Cardiology Associates and half of the $100.00 dental bill). Meanwhile, however, the Bureau mailed the Notice to Pipiles on April 9, 1987.

The Notice demanded payment of one-half of an outstanding amount of $135.00. Across the top of the Notice was printed in large type "48 HOUR NOTICE." The Notice also stated in capital letters that: "Notice is Hereby Given That This Item Has Already Been Referred For Collection Action," "We Will At Any Time After 48 Hours Take Action As Necessary And Appropriate To Secure Payment In Full," and "Pay This Amount Now If Action Is To Be Stopped." As for the source of the debt, a handwritten notation under the legend "On The Account Of" read "Drs Sippel, Doyle & Murray & Cardiology Associates 135.00". The Notice also contained the handwritten notations "for Patricia & Tina" and "Your ex-husband John Julius states that you are responsible for ½ the stated amount. Please remit to this office by *4–15–87*," as well as the name and address of Pipiles (as addressee), and the name, address and telephone number of the Bureau.

Pipiles called the Bureau the next day and told a secretary that she was not responsible for any bill relating to Patricia Julius, the wife of her ex-husband. In a telephone conversation that he initiated with Pipiles the next day, Emerick conceded this. Pipiles testified that she was never told by the Bureau what the breakdown was between the two bills which totalled $135.00, and has never paid the $50.00 that she concededly owes on the dental bill.

Emerick testified that he had no prior knowledge, when the Notice was sent to Pipiles, that Patricia was not a daughter of Pipiles and Julius, and that the $35.00 indebtedness to Cardiology Associates was included in the Notice for that reason. He further testified that in dealing with a $50.00 account (the amount of Pipiles' indebtedness), he would "try to contact by phone," but would not institute legal action for an account less than $150.00.

At the conclusion of the bench trial, the district court rendered an oral decision dismissing the complaint. The court made no specific determination with respect to Pipiles' claim that section 1692e(2)(A) was violated by a false representation as to the character and amount of a debt; this claim was not stated in Pipiles' complaint and is apparently raised for the first time on appeal. The district court rejected the overlapping claims of violations of section 1692e(5) ("threat to take any action that ... is not intended to be taken") and section 1692e(10) ("use of any false representation or deceptive means to collect or attempt to collect any debt"), concluding that "[t]here is nothing said here that he is going to refer this further to an attorney," and "there is no violation of either the letter or the spirit of the law." As to section 1692e(11), which, with an exception not here pertinent, requires the disclosure in "all communications made to collect a debt" that "the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose," the district court concluded that the failure of the Notice to include this information "may be excused under the circumstances" because the Bureau had no intent to deceive.

Judgment was thereupon entered for the defendant dismissing the complaint. This appeal followed.

### *Discussion*

#### A. *Violations of the FDCPA.*

On appeal, Pipiles argues that four subsections of 15 U.S.C. § 1692e were violated by the Notice. Section 1692e is violated when a debt collector uses "any false, deceptive, or misleading representation or means in connection with the collection of any debt." The sixteen subsections of section 1692e detail nonexclusive specifications of this general prohibition.

15 U.S.C. § 1692k(c) provides a general defense to any violation of § 1692e, however, stating:

A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error. Further, section 1692k(b)(1) provides that in determining the amount of liability in any individual action for violation of the FDCPA, "the court shall consider, among other relevant factors ..., the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional...."

Against this background, we turn to consideration of the specific statutory violations asserted by Pipiles.

### 1. *Section 1692e(2)(A).*

No violation of this subsection was pleaded, and no application to amend the pleadings to conform to the proof, *see* Fed.R. Civ.P. 15(b), was made here or below. Under these circumstances, we ordinarily refuse to consider a claim for the first time on appeal. *Hormel v. Helvering*, 312 U.S. 552, 556, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941); *Davis v. Musler*, 713 F.2d 907, 917 (2d Cir.1983) (Van Graafeiland, J., concurring); *Adato v. Kagan*, 599 F.2d 1111, 1116 (2d Cir.1979); *Terkildsen v. Waters*, 481 F.2d 201, 204–05 (2d Cir.1973).

This is an appropriate case to invoke this rule. Because this issue was not brought into focus below, the state of the record is quite murky concerning the Bureau's responsibility for the erroneous information transmitted in the Notice concerning the $35.00 indebtedness to Cardiology Associates for treatment of Patricia Julius. Furthermore, we determine hereinafter that (1) the Notice violated three other subdivisions of section 1692e, (2) no damages should be awarded to Pipiles, but (3) she is entitled to costs and a reasonable attorney's fee unless the Bureau is allowed to tender, and establishes, a section 1692k(c) defense on remand. None of these rulings would be changed in any respect by any determination we might make on Pipiles' section 1692e(2)(A) claim. In view of all the foregoing, we decline to consider it.

### 2. *Sections 1692e(5) and (10).*

Section 1692e(5) proscribes the "threat to take any action that cannot legally be taken or that is not intended to be taken," while section 1692e(10) forbids, in relevant part, "the use of any false representation or deceptive means to collect or attempt to collect any debt." Pipiles contends that the following language in the Notice constituted both threats of action that the Bureau did not intend to take and false representations: "Notice Is Hereby Given That This Item Has Already Been Referred for Collection Action;" "We Will At Any Time After 48 Hours Take Action As Necessary And Appropriate To Secure Payment In Full;" and "Pay This Amount Now If Action Is To Be Stopped." Pipiles testified that she "thought they'd take me to court, sue me and wreck my credit." She relies, with respect to the falsity of these statements and the lack of any intention to consummate the threatened action, upon Emerick's testimony that the Bureau routinely would take no further action on debts under $150.00, other than to "try to contact by phone."

The district court concluded that there was no violation because "there is nothing said here that he is going to refer this further to an attorney" and "there is no violation of either the letter or the spirit of the law." *Cf. Kleczy v. First Fed. Credit Control, Inc.*, 21 Ohio App.3d 56, 58, 486 N.E.2d 204, 206–07 (1984) (words "avoid further action" not sufficiently threatening to constitute statutory violation; additional letters constituted further action in any event).

Although it is a close question, given the vagueness of the language in the Notice, we conclude that a violation of section 1692e(5) and (10) has been established. The clear import of the language, taken as a whole, is that *some* type of legal action has already been or is about to be initiated and can be averted from running its course only by payment. The only "action" under-

way was the dispatching of the Notice itself, and the only prospective future "action" for this indebtedness was an attempt at telephone contact (which in fact occurred). *See Baker v. G.C. Servs. Corp.,* 677 F.2d 775, 778–79 (9th Cir.1982) (further telephone and mail solicitation not equivalent to threatened legal action). Pipiles is accordingly entitled to prevail on this issue.

### 3. *Section 1692e(11).*

15 U.S.C. § 1692e(11) (1982) prohibits, with an exception not here relevant, "the failure to disclose clearly in *all* communications made to collect a debt *or* to obtain information about a consumer, that the debt collector is attempting to collect a debt *and* that any information obtained will be used for that purpose" (emphasis added). It is uncontested that the first communication to Pipiles, which the district court found was sent although Pipiles denied receiving it, did meet these requirements. The question we must consider is whether the Notice nonetheless violated section 1692e(11).

We reject at the outset Pipiles' contention that the Notice violated the statute because it failed to state in so many words that the Bureau was attempting to collect a debt. As we said in *Emanuel v. American Credit Exch.,* 870 F.2d 805, 808 (2d Cir.1989), "it is clear from the face of the [Notice] that it was intended to obtain payment of a debt," and "there simply is no requirement that the [Notice] quote verbatim the language of the statute." The Notice, however, did not state that any information obtained would be used for the purpose of collecting the debt in question.

In *Emanuel* we "[thought] it clear from the plain language of section 1692e(11) that the debt collector must comply with both disclosure requirements, regardless of whether any information is sought." *Id.* We noted that "Congress employed the disjunctive 'or' when it described the types of communications covered by section 1692e(11), and the conjunctive 'and' when it described the contents required for inclusion in the communications." *Id.*

*Emanuel,* however, does not control our decision here. In *Emanuel,* the *initial* communication to the debtor failed to include the required information. We therefore decided, in accord with *Hulshizer v. Global Credit Servs., Inc.,* 728 F.2d 1037 (8th Cir.1984) (per curiam), another case involving an *initial* communication, that the statute had been violated. We distinguished *Pressley v. Capital Credit & Collection Serv., Inc.,* 760 F.2d 922 (9th Cir. 1985) (per curiam), where it was held that strict compliance with the statute was not required in the case of a *follow-up* communication, but stated that we "d[id] not necessarily agree that a distinction should be made between initial and follow-up letters, *see* 15 U.S.C. § 1692e(11) ('all communications' must make the required disclosures)." 870 F.2d at 808.

■ Since the district court in this case found that an initial communication was sent to Pipiles which complied with section 1692e(11), we must now address the question left open in *Emanuel* and determine whether the Notice, a *follow-up* communication, was also required to comply. We hold that it was, and therefore rule that Pipiles has established a violation of section 1692e(11).

" 'The starting point for our interpretation of a statute is always its language.' " *Mobil Oil Corp. v. Karbowski,* 879 F.2d 1052, 1054 (2d Cir.1989) (quoting *Community for Creative Non–Violence v. Reid,* — U.S. —, 109 S.Ct. 2166, 2172, 104 L.Ed.2d 811 (1989)). "Thus, '[a]bsent a clearly expressed legislative intention to the contrary, [the language used] must ordinarily be regarded as conclusive.' " *Id.* (quoting *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)).

The *Pressley* court avoided the conclusion that the required disclosures must be present in "all communications" by finding that such a result would "ignore the balancing mandated by Congress" between the interests of consumers in freedom from harassment and the interests of ethical debt collectors in freedom from unnecessary restrictions, 760 F.2d at 925, that

"[n]o useful purpose would be served by repetition of a formal warning in such a follow up notice to a debtor," *id.* at 926, and that this requirement was not intended by Congress, *id.* We disagree.

First, in providing that "all communications" contain the required disclosures, Congress appears to have precluded the "balancing" suggested in *Pressley.* Were balancing undertaken, allowing certain communications to omit the disclosures, the clear and unambiguous language *"all* communications" would effectively be changed to *"some* communications." Second, it is apparent that the prescribed requirement can further the Congressional purpose in enacting the FDCPA in 1977, which was to prevent "abusive, deceptive, and unfair debt collection practices." 15 U.S.C. § 1692 (1982). In fact, this case illustrates the utility of the statute. By requiring disclosure in all communications, Congress has ensured that even if the first notice is not received by the consumer, as Pipiles claims occurred here, subsequent notices will nonetheless provide the consumer with the requisite disclosures. Third, even if there were little discernible purpose in repetition, Congress could exercise its legislative judgment to adopt a reasonable margin of safety to insure its remedial goal. We are not at liberty to substitute a view different from that expressed by Congress in the legislative enactment.

We accordingly conclude that the Notice violated section 1692e(11).

## B. *The Credit Bureau's Section 1692k(c) Defense.*

As stated earlier, even though the Notice violated three subsections of section 1692e, the Bureau would nonetheless have a defense to these violations if it "show[ed] by a preponderance of the evidence that the violation was not intentional *and* resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c) (1982) (emphasis added). The district court concluded, as to the subdivision (5) and (10) allegations, that "[t]here is nothing said here that he is

going to refer this further to an attorney," and "there is no violation of either the letter or the spirit of the law." As to subdivision (11), the district court concluded that the failure to include the requisite disclosures "may be excused under the circumstances" because the Bureau had no intent to deceive.

There was no consideration, however, of the specific requirements of section 1692k(c) that the violation "result[ ] from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." *See Seabrook v. Onondaga Bureau of Medical Economics, Inc.,* 705 F.Supp. 81, 87 (N.D.N.Y.1989) (even if no intentional violation of FDCPA, defendant must establish statutorily required procedures to prevail on § 1692k(c) defense). In any event, it is likely that the violations which we have found resulted from a mistaken view of the law, which section 1692k(c) does not excuse. *See Hulshizer v. Global Credit Servs., Inc.,* 728 F.2d 1037, 1038 (8th Cir.1984) (per curiam); *Baker v. G.C. Servs. Corp.,* 677 F.2d 775, 779 (9th Cir.1982).

We note that the Bureau did not plead a section 1692k(c) defense in its answer, or argue it on appeal. Upon remand, the district court should determine in its discretion whether to allow the Bureau to tender a section 1692k(c) defense, should it apply to do so. In the event of an affirmative decision, the defense should be evaluated in accordance with the foregoing discussion.

## C. *Damages.*

It is clear that Congress painted with a broad brush in the FDCPA to protect consumers from abusive and deceptive debt collection practices, and courts are not at liberty to excuse violations where the language of the statute clearly comprehends them. Congress provided ample discretion to courts, however, in assessing damages for violations of this statute. In the case of a successful action by an individual to enforce the Act, section 1692k(a)(1) authorizes an award of any actual damage sustained by the plaintiff, section 1692k(a)(2)(A) permits "such additional

damages as the court may allow, but not exceeding $1,000," and section 1692k(a)(3) requires payment of "the costs of the action, together with a reasonable attorney's fee as determined by the court." In determining the amount of liability in any individual action, a court must consider, *inter alia*, "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was unintentional." 15 U.S.C. § 1692k(b)(1) (1982).

■ We conclude that Pipiles should not be awarded actual damages because she has not established any injury flowing from the Notice. Nor is Pipiles entitled to additional damages. The district court found, and we agree, that the Bureau did not intend to deceive or harass Pipiles, and there is no contention that the Bureau has frequently or persistently violated the Act. Thus, the nature of the Bureau's noncompliance does not warrant additional damages. Because the FDCPA was violated, however, the statute requires the award of costs and a reasonable attorney's fee, *see Emanuel v. American Credit Exch.*, 870 F.2d 805, 809 (2d Cir.1989), to be determined by the district court upon remand unless the Bureau is allowed to tender and establishes a successful 1692k(c) defense to the violations determined herein.

### Conclusion

The order dismissing the complaint is reversed and the case is remanded for consideration of any section 1692k(c) defense which the Bureau may be allowed to tender, and the award of costs and a reasonable attorney's fee to Pipiles unless such defense is allowed and established.