Louis ROBINSON and Emma Robinson, Plaintiffs,

v.

TRANSWORLD SYSTEMS, INC., Defendant.

Civ. A. No. 93–CV–1031 (RSP).

United States District Court, N.D. New York.

Feb. 8, 1995.

UAW Legal Services Plan, Syracuse, NY (Kathleen Stevenson, of counsel), for plaintiffs.

Watson, Bennett, Colligan, Johnson & Schechter, Buffalo, NY (David J. Colligan, Lisa M. Mueller, of counsel), for defendant.

## MEMORANDUM–DECISION AND ORDER

POOLER, District Judge.

### INTRODUCTION

Both defendant Transworld Systems, Inc. ("TSI") and plaintiffs Louis and Emma Robinson have moved for summary judgment in this action brought pursuant to the Fair Debt Collection Practices Act (15 U.S.C. § 1692 *et seq.*) (FDCPA). TSI seeks dismissal of the complaint in its entirety while plaintiffs seek summary judgment on liability. Oral argument was heard on January 23, 1995.

### BACKGROUND

#### I. Factual Background

The parties agree that TSI sent the Robinsons a series of three debt collection notices on behalf of H . & R Block. The notices, which were dated August 10, 1992, August 20, 1992 and September 10, 1992 are reproduced in Appendix A. None of these notices contained the validation notice required by 15 U.S.C. § 1692g(a). TSI maintains, however, that before sending the Robinsons the August and September notices, it sent them

a notice on July 31, 1992 [1] that did contain the language required by 15 U.S.C. § 1692g(a).[2]

The parties also agree that TSI and an attorney who is not involved in this litigation previously sent Louis Robinson another series of collection notices on behalf of Dr. Fadi Abdallah (the "Abdallah Notices"). Louis Robinson [3], who was represented by the same lawyer who currently represents both Robinsons, complained that the Abdallah Notices violated the FDCPA. On April 2, 1992, Louis Robinson signed a settlement agreement and release under which he released TSI from all claims arising out of the dispute concerning the Abdallah Notices. TSI President George Macaulay signed this release on July 8, 1992. The agreement required TSI to pay Louis Robinson $1,350.00. Louis Robinson then claimed that TSI sent another notice that violated the FDCPA after he had signed the settlement agreement and release. TSI agreed to pay an additional $900.00 and Louis Robinson signed another settlement agreement and release (the "Second Release") on July 29, 1992. This release, which Macaulay signed on August 25, 1992, recited that it pertained "to all claims of ROBINSON against TSI arising after April 2, 1992." It also noted that it included but was not limited to matters "arising out of or by reason of any facts or matters alleged in the dispute."

The Robinsons' attorney first notified TSI that she represented the Robinsons with respect to the H & R Block debt on October 27, 1992.

## II. The Parties' Contentions

The Robinsons initially alleged that they did not receive any notice of their validation rights under the FDCPA in violation of section 1692g(a). 15 U.S.C. § 1692g(a). While not conceding receipt of the July 31st notice containing the requisite validation language, the Robinsons now also argue that the validation notice in the July 31st notice was contradicted and overshadowed by both the sheer volume and the language of subsequent notices. The Robinsons also contend that TSI violated 15 U.S.C. § 1692c(a)(2) by communicating directly with them although TSI knew that the Robinsons were represented by counsel as a result of the Abdallah settlement. Finally, the Robinsons claim that all of the notices TSI sent violate 15 U.S.C. § 1692e(5) by threatening action which TSI did not intend to take and 15 U.S.C. § 1692e(10) by making false representations or using deceptive practices to collect a debt.

TSI maintains that the Second Release bars both Robinsons from asserting any

---

1. TSI President George Macaulay has sworn that TSI keeps no hard copies of notices sent out and therefore has not produced a copy of the actual notice sent to the Robinsons on July 31, 1992. In an affidavit sworn to on October 27, 1994, he identified one form notice as the prototype for the notice sent to the Robinsons. On November 10, 1994, he submitted an additional affidavit in which he stated that he had been mistaken as to the form sent to the Robinsons and identified a different form. Both forms, however, contain the validation language required by section 1692g(a). Both are set out in Appendix A.

2. Section 1692g(a) provides:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
> (1) the amount of the debt;
> (2) the name of the creditor to whom the debt is owed;

> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

3. TSI claims that the notices were sent to both Robinsons and that both filed suit. The Robinsons' attorney claims that the matter was settled without suit and that only Louis Robinson was involved. This factual dispute is not material because it is uncontroverted that only Louis Robinson signed the releases on which TSI relies.

FDCPA claims, even claims that may have accrued after Louis Robinson signed the Second Release. Next, TSI urges that as a matter of law it has established either that it sent the July 31st notice containing the requisite validation language or that any failure to do so was the result of a bona fide error exempting it from liability under 15 U.S.C. § 1692k(c). TSI also argues that because it did not know the Robinsons were represented by counsel with respect to the H & R Block debt until October 27, 1992, it had no obligation to refrain from contacting the Robinsons directly before that date. Finally, TSI urges that nothing in any of the letters contradicts or overshadows the validation notice or violates Sections 1692e(5) or (10).

## DISCUSSION

### I. Standard for Summary Judgment

 Summary judgment shall enter if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The materiality of facts must be determined with reference to the governing substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party has the initial responsibility of demonstrating that there is no genuine issue of material fact to be decided. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). As to any issue on which the moving party does not have the burden of proof, the moving party may satisfy its burden by "pointing out to the district court ... that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. at 2554.

 "If the movant satisfies the burden of establishing that there is no genuine issue of material fact, then the burden shifts to the nonmovant to proffer evidence demonstrating that a trial is required because a disputed issue of material fact exists." *Weg v. Macchiarola,* 995 F.2d 15, 18 (2d Cir.1993). In satisfying this burden, the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). The opponent of a summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). "[M]erely colorable" evidence will not suffice as a basis for opposing summary judgment. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2511.

 In weighing a motion for summary judgment, the court must accept as true the non-moving party's evidence and make "all justifiable inferences" in the non-moving party's favor. *Id.* at 255, 106 S.Ct. at 2513. The evidentiary standard governing proof at trial determines how the court must assess the evidence in deciding whether the summary judgment standard has been met. *Id.* at 254–55, 106 S.Ct. at 2513–14. In an ordinary civil case, such as this one, where plaintiffs must prove their case by a preponderance of the evidence, the determinative standard is "whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict." *Id.* at 252, 106 S.Ct. at 2512.

 A party may move for summary judgment on part or all of its claim. Fed. R.Civ.P. 56(a) and (b). In addition, if the court does not dispose of the entire case or grant all the relief requested by a party on a summary judgment motion, it should, if practicable, enter an order establishing which facts are uncontroverted and which are subject to genuine factual controversy. Fed. R.Civ.P. 56(d).

### II. The Second Release

 Emma Robinson did not sign the Second Release and cannot be bound by it. We therefore grant plaintiff partial summary judgment establishing that none of Emma Robinson's claims are barred by the Second Release.

 With respect to Louis Robinson, TSI relies on portions of the Second Release stating that it applies to all claims of Robinson against TSI "arising after April 2, 1992" and that it includes but is not limited to "those

arising out of or by reason of any facts or matters alleged in the dispute [with respect to the Abdallah claim]." TSI also relies on Macaulay's assertion that it was his intent and the intent of the parties to apply the release to any claim the Robinsons might ever have against TSI pursuant to the FDCPA. Plaintiffs' attorney, who participated in the negotiation of the settlement agreement and release, indicates that the parties only intended that the cited language distinguish the subject matter of the Second Release from that of the previous release.

■ Under New York law,[4] a court must find the intent of the parties to a contract as a matter of law if that intent is clear from the language of the contract. However, if the language is ambiguous, the court must consider extrinsic evidence. *Commander Oil Corp. v. Advance Food Serv. Equip.*, 991 F.2d 49, 51 (2d Cir.1993). Here the cited language does not clearly support either interpretation urged by the parties and some extrinsic evidence supports either interpretation. Therefore, we reserve the issue of the parties' intent for the finder of fact.

### III. The Section 1692c(a)(2) Issue

■ The Robinsons' claim that TSI violated Section 1692c(a)(2) of the FDCPA by communicating directly with them lacks merit. Section 1692c(a)(2) forbids a debt collector from communicating directly with a consumer if "the debt collector knows the consumer is represented by an attorney *with respect to such debt....*" 15 U.S.C. § 1692c(a)(2) (emphasis added). Knowledge of prior representation with respect to a different debt does not preclude the debt collector from communicating directly with the consumer on another debt collection matter. *Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir.1991). *Harvey v. United Adjustors*, 509 F.Supp. 1218 (D.Or.1981), on which plaintiffs rely, is not to the contrary. In *Harvey*, the debt collector knew that the consumer had been represented by counsel in a debt collection action in which the debtor

ultimately confessed judgment. In addition, the debt collector knew that the consumer was represented by the same counsel in an FDCPA action in federal court. Nevertheless, after the consumer confessed judgment in the debt collection action, the debt collector communicated directly with the consumer in an effort to enforce the judgment. The court held that these communications made while the debt collector knew that the consumer was represented with respect to the very debt it sought to collect violated the FDCPA. *Id.* at 1220–21. Here, plaintiffs have not controverted Macaulay's assertion that TSI first learned that the consumers were represented by counsel with respect to the H & R Block debt after October 27, 1992. Therefore, we grant TSI partial summary judgment establishing that notices sent directly to the consumer in July, August and September of 1992 did not violate Section 1692c(a)(2).

### IV. Receipt of the July 31 Notice

■ TSI President George Macaulay described elaborate data verification, data entry and reconciliation procedures that TSI uses in generating debt collection notices. Most significantly, Macaulay swore that the computer program TSI uses will not send subsequent collection notices unless it has generated a first notice containing the validation notice required by 15 U.S.C. § 1692g(a). TSI's records show that a first notice was sent to the Robinsons on July 31, 1992 and not returned. The Robinsons offer no evidence to controvert the reliability of the procedures TSI uses and instead rely on a lack of specific recollection as to whether they received a notice containing the Section 1692g(a) validation language. At best, the Robinsons' lack of recollection creates a "metaphysical doubt" as to their receipt of the July 31, 1992 notice. Therefore, we find as a matter of law that the Robinsons did receive the July 31, 1992 notice. *Matsushita*, 475

---

4. Neither party has urged that any law other than that of New York controls the interpretation of this agreement. Plaintiffs reside in New York State. They also have alleged that TSI has its principal place of business in Amherst, New York. Defendant denies that its principal place of business is in Amherst but admits that it has a place of business there and does not specify either its state of incorporation or its principal place of business.

U.S. at 586, 106 S.Ct. at 1355; Fed.R.Civ.P. 56(d).[5]

However, because the Robinsons also claim that language in subsequent notices contradicted and overshadowed the validation language, we must still determine whether TSI's subsequent notices violated 15 U.S.C. § 1692g(a). Thus, a finding that the Robinsons received the July 31st notice does not suffice to support summary judgment in favor of TSI.

## V. The Contradicting and Overshadowing Claim

■■■■■ Section 1692g(a) requires not only that the debt collector inform the consumer of certain rights in the debt collector's first communication or within five days of that initial communication, but also that the remainder of the letter containing the validation notice not contradict or overshadow the validation notice. *See Graziano,* 950 F.2d at 111; *Miller v. Payco–General Am. Credits, Inc.,* 943 F.2d 482, 484 (4th Cir. 1991); *Swanson v. Southern Oregon Credit Serv., Inc.,* 869 F.2d 1222, 1225 (9th Cir. 1988); *Russell v. Equifax A.R.S.,* 1994 WL 672648 *2 (N.D.N.Y.1994); *Siler v. Management Adjustment Bureau,* 1992 WL 32333 *2; (W.D.N.Y.1992); *Rabideau v. Management Adjustment Bureau,* 805 F.Supp. 1086, 1093 (W.D.N.Y.1992); *Kizer v. American Credit & Collection* 1990 WL 317475 *2 (D.Conn.1990); *Gaetano v. Payco of Wis., Inc.,* 774 F.Supp. 1404, 1410–1411 (D.Conn. 1990). Language in communications sent after the validation notice may also contradict or overshadow the notice in violation of Section 1692g(a). *Rabideau,* 805 F.Supp. at 1094; *Anthes v. Transworld Sys., Inc.,* 765 F.Supp. 162, 171 (D.Del.1991); *Gaetano,* 774 F.Supp. at 1410–1412. The court must use the least sophisticated debtor or consumer standard in determining whether the remainder of a collection letter overshadows or contradicts the required debt validation notice. *See Graziano,* 950 F.2d at 111; *Swanson,* 869 F.2d at 1225; *Russell,* 1994 WL 672648 at *2; *Siler,* 1992 WL 32333 at *2; *Rabideau,* 805 F.Supp. at 1093. *But see Gammon v. G.C.*

*Serv. Ltd. Partnership,* 27 F.3d 1254, 1257 (7th Cir.1994) (adopting an "unsophisticated consumer" standard). The least sophisticated consumer standard "ensures the protection of all consumers, even the naive and trusting ... and protects debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices." *Clomon v. Jackson,* 988 F.2d 1314, 1320 (2d Cir.1993).

■■■■ The Robinsons complain that various statements in the August 10, 1992, August 20, 1992 and September 10, 1992 notices contradict and overshadow the validation language contained in the July 31st notice. Because consumers' debt validation rights persist for only 30 days after receipt of a communication containing the validation notice, the September 10, 1992 notice cannot violate 1692g(a) regardless of its content. 15 U.S.C. 1692g(a)(3), (4), and (5). We therefore grant TSI partial summary judgment dismissing plaintiffs' 1692g(a) claims insofar as they concern the September 10, 1992 notice.

■■■■ We grant the Robinsons partial summary judgment with respect to the August 20, 1992 notice. This notice, which TSI sent only 20 days after sending the validation notice, contained the language "SINCE VALIDITY OF THIS LONG OVERDUE ACCOUNT HAS NOT BEEN DISPUTED, IT IS NOW ASSUMED TO BE VALID." This language flatly contradicts Section 1692g(a), which does not allow the debt collector to assume the validity of a debt until 30 days have passed after receipt of the validation notice. 15 U.S.C. § 1692g(a)(3). This language also contradicts TSI's own July 31st notice. In *Anthes,* the Delaware district court considered exactly the same language used by exactly the same defendant and found it violated § 1692g(a). *Anthes,* 765 F.Supp. at 171. TSI urges that the holding in *Anthes* should be rejected in light of the "later, higher" authority of *Smith v. Transworld Sys., Inc.,* 953 F.2d 1025 (6th Cir. 1992). Counsel for TSI stated at oral argument that *Smith* approved a notice identical to the August 20, 1992 notice. In fact, *Smith*

---

**5.** Even if the proof TSI furnished did not compel a finding that the Robinsons received the July 31st notice, it supports a bona fide error defense pursuant to 15 U.S.C. § 1692k(c).

neither explicitly nor implicitly approves sending a notice stating a debt is assumed to be valid before the expiration of the validation period. *Smith* considered only the first two collection notices in the series that TSI routinely sends. *Id.* at 1026–1027. The August 20, 1992 notice, which contained the offending language, is the third in that series. Moreover, the plaintiff in *Smith* made no claim of contradicting language concerning either of the notices he received. *Id.* at 1027.

█ Plaintiffs argue that other portions of the August 10th and August 20th notices violate Section 1692g(a) by contradicting and overshadowing the validation notice. Specifically, they complain that the August 10, 1992 notice states: "IMPERATIVE—GRACE PERIOD ABOUT TO EXPIRE," and demands that they contact their creditor "AT ONCE" and that the August 20, 1992 notice states: "PLEASE BE ADVISED THAT THERE ARE TWO WAYS OF SETTLING A LEGITIMATE DEBT—TIMELY PAYMENT OR AS THE RESULT OF PROTRACTED AND UNPLEASANT COLLECTION EFFORT." The Robinsons suggest that the cumulative effect of this language is to create a strong impression of urgency. They argue further that because the two notices do not refer back to the validation notice, the least sophisticated consumer easily would be confused or threatened into ignoring his or her rights to dispute the debt and receive documentation.

To support its claim that the August 10th and August 20th notices do not contradict or overshadow the validation notice, TSI relies on *Severson v. Transworld Sys., Inc.,* No. 93–C–682–S, Slip Op. (W.D.Wis.1994), *Latimer v. Transworld Sys., Inc.,* 842 F.Supp. 274 (E.D.Mich.1993) and *Anthes.* None of these cases considers the cumulative effect of the language in the notices; each instead focuses principally on just one portion of the language, i.e. "IMPERATIVE—GRACE PERIOD ABOUT TO EXPIRE," and finds that language does not impermissibly contradict or overshadow the validation notice. A reasonable jury could, but would not be required to, find that the language in both notices considered cumulatively intimates that the

consumer must take action immediately and would mislead the least sophisticated consumer into disregarding his validation rights allowing 30 days to dispute a debt. *See Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513, *Swanson,* 869 F.2d at 1225–1226. Therefore, we deny both parties' motions for summary judgment on the Section 1692g(a) claims except as specifically set out above.

## VI. Section 1692e(5) Claim

█ Section 1692e(5) of the FDCPA forbids the debt collector from threatening to take "any action that cannot legally be taken or is not intended to be taken." 15 U.S.C. § 1692e(5). In the August 10th letter, TSI implied that additional costs and further communication might follow if the Robinsons did not contact H & R Block at once. In the August 20th letter, TSI warned of the possibility of a "PROTRACTED AND UNPLEASANT COLLECTION EFFORT" if timely payment was not made. Finally, in the September 10, 1992 letter, TSI alluded to the "PROBLEMS AND POSSIBLE CONSEQUENCES CONNECTED WITH NON-PAYMENT OF A LEGITIMATE DEBT," threatened a recommendation to transfer the Robinsons' file to the Credit Management Services Office nearest them, and indicated that voluntary settlement would be the best policy. None of these statements threatens action that could not be taken legally. Thus it is necessary to examine whether they threaten action which TSI did not intend to take.

Plaintiffs, in their memorandum of law, indicate that the language used by TSI implicitly threatens a lawsuit and that TSI had no intention of suing them. They rely on *Pipiles v. Credit Bureau of Lockport, Inc.,* 886 F.2d 22 (2d Cir.1989). In *Pipiles,* the court considered the following language: "Notice is Hereby Given That This Item Has Already Been Referred for Collection Action;" "We Will At Any Time After 48 Hours Take Action As Necessary And Appropriate To Secure Payment in Full;" and "Pay This Amount Now If Action Is to Be Stopped." *Id.* at 25. The court held that the clear import of the quoted language was that some type of legal action had been taken or was

about to be taken. *Id.* Because the defendant in *Pipiles* conceded that legal action was not usually taken for such small accounts, the court held that the notices violated § 1692e(5). *Id.*

The language in TSI's notices does not contain a clear threat similar to that found in *Pipiles.* Moreover, TSI's president indicates that TSI does indeed refer files on which payment has not been made to its Credit Management Services Office after sending the standard collection notices. He further indicates that TSI's Credit Management Services Office does recommend legal action depending on the facts and circumstances of each individual file. The record is therefore entirely devoid of proof either that TSI threatened to initiate a lawsuit or that it did not intend to commence a lawsuit. We therefore grant TSI summary judgment dismissing all claims made pursuant to Section 1692e(5).

## VII. The § 1692e(10) Claim

Section 1692e(10) forbids "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(10). In essence, plaintiffs contend that every statement they claim violates either Section 1692g(a) or Section 1692e(5) also violates Section 1692e(10) as a deceptive practice or false representation.

We already have ruled that there are no Section 1692e(5) violations because TSI has not threatened action that it did not intend to take. Therefore, these same statements cannot violate Section 1692e(10) as false representations or deceptive practices.

As noted above, the August 20, 1992 notice stated that plaintiffs' debt was assumed to be valid even though the Robinsons still had 10 days to contest this debt before its validity could be assumed. Therefore, the August 20, 1992 notice contained a false representation. In *Anthes,* the court held the same false representation to be insufficient to support a finding that TSI had violated Section 1692e(10) because TSI sent the offending notice only two days before the expiration of the validation period. *Anthes,* 765 F.Supp.

at 171. Under these circumstances, the court concluded that the debt collector did not send the notice early with the expectation that this action would enable it to collect a debt. *Id.* Here, in contrast, the notice was sent 10 days before it was legally permissible to assume the validity of the debt. Moreover, this very defendant had been forewarned by the court in *Anthes* that the same statement was actionable at least as a violation of Section 1692g(a). *Id.* In this markedly different procedural posture, we find that the statement that the plaintiffs' debt was assumed to be valid did violate Section 1692e(10). Plaintiffs' motion for summary judgment on this claim therefore is granted.

Plaintiffs complained that several other portions of the August 10th and August 20th notices violated Section 1692g(a) because they contradicted or overshadowed the validation notice. We reserved these claims for the jury and the same result is appropriate for claims concerning the same statements under Section 1692e(10). *Cf. Jeter v. Credit Bureau, Inc.,* 760 F.2d 1168, 1178 (11th Cir. 1985) (whether the least sophisticated consumer would construe language susceptible of more than one meaning as deceptive is a question for the jury).

## VIII. Sanctions

In its answer, TSI counterclaimed for sanctions and attorneys' fees pursuant to Fed.R.Civ.P. 11. The Robinsons, believing this request to be one for attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3), request in their memorandum of law although not in their notice of motion or supporting affidavit that we deny this request. Because of this procedural posture, plaintiffs' request cannot properly be acted upon. However, we note in passing that no basis for sanctions pursuant to Fed.R.Civ.P. 11 has yet been established.

## CONCLUSION

Plaintiffs are granted partial summary judgment on liability establishing that TSI violated 15 U.S.C. § 1692g(a) and 15 U.S.C. § 1692e(10) by the assertion that "SINCE VALIDITY OF THIS LONG OVERDUE

ACCOUNT HAS NOT BEEN DISPUTED, IT IS NOW ASSUMED TO BE VALID" in the August 10th notice. TSI is granted summary judgment establishing that it did not violate 15 U.S.C. § 1692e(5) or 15 U.S.C. § 1692c(a)(2) and that its September 10, 1992 notice did not violate Section 1692g(a) or any other provision of the FDCPA. In addition, TSI is granted summary judgment dismissing all claims that statements threatening further action by TSI constitute violations of 15 U.S.C. § 1692e(10). TSI is also granted an order pursuant to Fed.R.Civ.P. 56(d) establishing that the Robinsons received the July 31 notice. Plaintiffs are granted partial summary judgment establishing that Emma Robinson is not bound by the Second Release. All other issues properly raised on this motion, including the effect of the Second Release on Louis Robinson's claims, are reserved for the jury.

IT IS SO ORDERED.

### APPENDIX A

1. *August 10, 1992 Notice:*

IMPERATIVE—GRACE PERIOD ABOUT TO EXPIRE. OUR CLIENT SHOWS AN UNPAID ACCOUNT IN THE ABOVE STATED AMOUNT APPEARING LEGALLY DUE AND OWING BY YOU.

THIS ACCOUNT HAS BEEN REFERRED TO OUR AGENCY AND WE ARE AUTHORIZED TO PURSUE COLLECTION. WITH OFFICES NATIONWIDE, A NUMBER OF ALTERNATIVES ARE AVAILABLE TO US TO EFFECT SETTLEMENT. YOU MAY ELIMINATE THE POSSIBILITY OF ADDITIONAL COSTS AND MAKE FURTHER COMMUNICATION UNNECESSARY BY CONTACTING YOUR CREDITOR AT ONCE. BE SURE TO ENCLOSE THIS LETTER WITH YOUR PAYMENT FOR PROPER IDENTIFICATION.

H & R BLOCK TEL. 315/475–1040
ATTN CREDIT RATING DEPARTMENT
P O BOX 6029
SYRACUSE NY 13217

*Smaller print at the bottom of the notice states:* "Transworld Systems Inc. is a licensed collection agency and any information obtained from you will be used for the purpose of collecting this debt."

2. *August 20, 1992 Notice:*

ABOVE CLAIM STILL DUE. SINCE VALIDITY OF THIS LONG OVERDUE ACCOUNT HAS NOT BEEN DISPUTED, IT IS NOW ASSUMED TO BE VALID.

PLEASE BE ADVISED THAT THERE ARE TWO WAYS OF SETTLING A LEGITIMATE DEBT—TIMELY PAYMENT OR AS THE RESULT OF PROTRACTED AND UNPLEASANT COLLECTION EFFORT. AT THIS TIME THE CHOICE IS STILL YOURS. MAKE FURTHER EFFORT ON OUR PART UNNECESSARY BY MAKING PAYMENT TO—

H & R BLOCK TEL. 315/475–1040
ATTN CREDIT RATING DEPARTMENT
P O BOX 6029
SYRACUSE NY 13217

*The bottom of the letter, in smaller type, states:* "Transworld Systems, Inc. is a licensed collection agency and any information obtained from you will be used for the purpose of collecting this debt."

3. *September 10, 1992 Notice:*

YOU HAVE BEEN ADVISED OF THE PROBLEMS AND POSSIBLE CONSEQUENCES CONNECTED WITH NON–PAYMENT OF A LEGITIMATE DEBT.

UNLESS TIMELY PAYMENT IS MADE, WE WILL RECOMMEND TO OUR CLIENT THAT THIS CLAIM BE TRANSFERRED TO THE CREDIT MANAGEMENT SERVICES OFFICE NEAREST YOU FOR PERSONAL ATTENTION BY THEIR STAFF.

VOLUNTARY SETTLEMENT NOW WOULD BE YOUR BEST POLICY. WIRE PAYMENT TO—

H & R BLOCK TEL. 315/475–1040
ATTN CREDIT RATING DEPARTMENT
P O BOX 6029
SYRACUSE NY 13217

*The bottom of the letter, in smaller type, states:* "Transworld Systems, Inc. is a licensed collection agency and any information obtained from you will be used for the purpose of collecting this debt."

4. *Contents of July 31 Notice as Alleged in First Macaulay Affidavit:*

URGENT—THIS ACCOUNT HAS BEEN ASSIGNED TO OUR AGENCY FOR IMMEDIATE COLLECTION.

PLEASE BE ADVISED THAT WE HAVE BEEN AUTHORIZED TO PURSUE COLLECTION AND ARE COMMITTED TO MAKE WHATEVER EFFORTS ARE NECESSARY AND PROPER TO EFFECT COLLECTION.

STRONGLY RECOMMEND YOU CONTACT OUR CLIENT TO MAKE PAYMENT ARRANGEMENT—

 ACCOUNTS RECEIVABLE MANAGER
 TEL. 999/465–3252

 XYZ MANUFACTURING COMPANY

 2500 HARBOR BOULEVARD

 CITY, ST ZIP

*The bottom of the letter in smaller type states:*

Transworld Systems Inc. is a licensed collection agency and any information obtained from you will be used for the purpose of collecting this debt. All portions of this claim shall be assumed valid unless disputed within thirty days of receiving this notice. If disputed in writing, verification of the debt will be provided to you. If the original creditor is different from the above named creditor, the name and address of the original creditor will also be provided.

5. *July 31 Notice as Alleged in Second Macaulay Affidavit:*

COURTESY NOTICE—OUR CLIENT HAS REQUESTED THAT WE CONTACT YOU REGARDING YOUR OVERDUE PAYMENT. WE REALIZE THIS COULD BE AN OVERSIGHT ON YOUR PART AND NOT A WILLFUL DISREGARD OF AN ASSUMED OBLIGATION. IF THERE IS A LEGITIMATE MISUNDERSTANDING CONCERNING THIS DEBT, CONTACT YOUR CREDITOR AND DISCUSS IT.

PLEASE MAKE FURTHER COLLECTION PROCEDURES UNNECESSARY BY SENDING PAYMENT IN FULL OR MAKING SATISFACTORY ARRANGEMENTS WITH—

 XYZ MANUFACTURING COMPANY
 TEL. 999/465–3252

 2500 HARBOR BOULEVARD

 CITY, ST ZIP

NOTICE—SEE IMPORTANT MESSAGE NO. 1 ON REVERSE SIDE.

*At the bottom of the page in smaller print, the notice states:*

Transworld Systems Inc. is a licensed collection agency and any information obtained from you will be used for the purpose of collecting this debt. All portions of this claim shall be assumed valid unless disputed within thirty days of receiving this notice. If disputed in writing, verification of the debt will be provided to you. If the original creditor is different from the above named creditor, the name and address of the original creditor will also be provided.